IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF LOUISIANA, MONROE DIVISION

**PARKER AUTO BODY, INC.,**
**AUTO BODY SPECIALIST, INC.,**
**EAGLE AUTO BODY & PAINT SERVICE, INC.,**
**REYNOLDS BODY WORKS, L.L.C.,**
**JAY SMITH, D/B/A PRECISION COLLISION,**
**BRADSHAW'S BODY SHOP, INC.,**
**MITCHELL BODY & FRAME SHOP, INC.,**
**ADVANTAGE COLLISION CENTER, INC.,**
**MEDINE'S COLLISION CENTER, LLC,**
**ROBERT JORDAN, D/B/A JORDAN'S**
  **AUTOMOTIVE AND PERFORMANCE**
**JIM'S BODY SHOP, LLC,**
**ADAMS COLLISION L.L.C.,**
**BIG EASY COLLISION L.L.C.,**
**LE JEUNE'S BODY WORKS, INC.,**
**BROUILLETTE'S PAINT & BODY, LLC,**
**C&C AUTOMOTIVE, LLC, D/B/A MILES**
  **PAINT AND BODY,**
**GUILLORY'S COLLISION CENTER, INC.,**
**COMPLETE COLLISION EQUIPMENT SERVICES, L.L.C.,**
**GOLDSTON'S AUTO BODY L.L.C.,**
**JOHNNIE'S PAINT AND BODY SHOP, INC.,**
**KRYSTAL AUTO COLLISION, INC.,**
**BRILEY'S PAINT AND BODY SHOP, INC.,**
**BOBBY'S PAINT AND BODY SHOP AND**
  **AUTO SALES, L.L.C.,**
**GINN'S AUTOMOTIVE FRAME SHOP, LLC,**
**TAYLOR AUTO BODY, L.L.C.,**
**BATTERY WAREHOUSE OF NATCHITOCHES, INC.,**
  **D/B/A TONY'S BODY SHOP,**
**LLOYD LAUW COLLISION REPAIR CENTER, L.L.C.**
**STUBBS, INCORPORATED, D/B/A EXPRESSWAY**
  **PAINT AND BODY**
**COUNTRY CLUB AUTO REPAIR, INC.,**
**FINAL TOUCH COLLISION REPAIR, INC.,**
**KEITH'S PAINT & BODY, L.L.C.,**
**MARTIN'S PAINT & BODY, INC.,**

**ANTLEY'S COLLISION & REPAIR CENTER, L.L.C.,**
**DAVID PROFIT D/B/A DAVE'S AUTO BODY,**
**DOMINIC LANDRY, D/B/A DOM'S PAINT**
      **& BODY,**
**CHRISTOPHER ROBERTSON, D/B/A CHRIS'S**
      **AUTO BODY,**
**A.W. STAGGS, D/B/A STAGGS AUTO BODY**
      **SHOP,**
**EDWARD DUCHESNE, D/B/A DUCHESNE**
      **PAINT & BODY,**
**KENCADE ENTERPRISES, INC., D/B/A**
      **KEN'S KUSTOM BODY SHOP**                  **PLAINTIFFS**

**vs.**                                          **CAUSE NO. _____**

**STATE FARM MUTUAL AUTOMOBILE**
      **INSURANCE COMPANY,**
**STATE FARM FIRE AND CASUALTY COMPANY,**
**STATE FARM GENERAL INSURANCE COMPANY,**
**PROGRESSIVE SECURITY INSURANCE**
      **COMPANY,**
**PROGRESSIVE PALOVERDE INSURANCE**
      **COMPANY,**
**ALLSTATE PROPERTY AND CASUALTY**
      **INSURANCE COMPANY,**
**ALLSTATE FIRE AND CASUALTY**
      **INSURANCE COMPANY,**
**ALLSTATE INDEMNITY COMPANY,**
**ALLSTATE INSURANCE COMPANY,**
**LOUISIANA FARM BUREAU CASUALTY**
      **INSURANCE COMPANY,**
**GEICO CASUALTY COMPANY,**
**GEICO GENERAL INSURANCE COMPANY,**
**GEICO INDEMNITY COMPANY,**
**USAGENCIES CASUALTY INSURANCE**
      **COMPANY,**
**SAFECO INSURANCE COMPANY OF OREGON,**
**SAFECO INSURANCE COMPANY OF AMERICA,**
**USAA CASUALTY INSURANCE COMPANY,**
**USAA GENERAL INDEMNITY COMPANY,**
**GOAUTO INSURANCE COMPANY,**
**SAFEWAY INSURANCE COMPANY OF**
      **LOUISIANA,**

LIBERTY MUTUAL FIRE INSURANCE COMPANY,
LIBERTY MUTUAL INSURANCE COMPANY,
GOVERNMENT EMPLOYEES INSURANCE
     COMPANY,
SHELTER MUTUAL INSURANCE COMPANY,
SHELTER GENERAL INSURANCE COMPANY,
DIRECT GENERAL INSURANCE COMPANY
     OF LOUISIANA,
AIG PROPERTY CASUALTY COMPANY,
NATIONWIDE MUTUAL INSURANCE COMPANY,
SENTRY INSURANCE, A MUTUAL COMPANY,
SENTRY SELECT INSURANCE COMPANY,
THE HANOVER INSURANCE COMPANY,
THE HANOVER AMERICAN INSURANCE
     COMPANY,
HARTFORD ACCIDENT AND INDEMNITY
     INSURANCE COMPANY,
HARTFORD CASUALTY INSURANCE
     COMPANY,
HARTFORD FIRE INSURANCE COMPANY,
ENCOMPASS INDEMNITY COMPANY,
ENCOMPASS INSURANCE COMPANY
     OF AMERICA,
ENCOMPASS PROPERTY AND CASUALTY
     COMPANY,
TRAVELERS CASUALTY AND SURETY COMPANY,
TRAVELERS CASUALTY AND SURETY
     COMPANY OF AMERICA,
THE TRAVELERS INDEMNITY COMPANY
     OF AMERICA,
THE TRAVELERS INDEMNITY COMPANY
     OF CONNECTICUT,
THE TRAVELERS INDEMNITY COMPANY,
TRAVELERS PROPERTY CASUALTY
     COMPANY OF AMERICA
FARMERS INSURANCE EXCHANGE,
UNITED FIRE AND CASUALTY COMPANY,
UNITED FIRE & INDEMNITY COMPANY,
21ST CENTURY NORTH AMERICA INSURANCE
     COMPANY,
21ST CENTURY CENTENNIAL INSURANCE COMPANY,
AMERICA FIRST INSURANCE COMPANY,
AMERICAN NATIONAL GENERAL INSURANCE
     COMPANY,
AMERICAN NATIONAL PROPERTY AND

**CASUALTY COMPANY,**
**ESURANCE INSURANCE COMPANY,**
**FIREMAN'S FUND INSURANCE COMPANY,**
**IMPERIAL FIRE AND CASUALTY INSURANCE**
      **COMPANY**                                                                      **DEFENDANTS**

---

## COMPLAINT

## JURY TRIAL DEMANDED

---

COME NOW, the above-captioned Plaintiffs, pursuant to the Federal Rules of Civil Procedure and other applicable authority and file this, their Complaint against the above-captioned Defendants, and in support thereof, state the following:

### PARTIES

1.    Plaintiff Parker Auto Body, Inc., is a Louisiana corporation authorized to do business in Louisiana and is doing business at 4560 Cypress Street, West Monroe, Louisiana 71291.

2.    Plaintiff Auto Body Specialists, Inc., is a Louisiana corporation authorized to do business in Louisiana and is doing business at 1319 North 7th Street, West Monroe, Louisiana 71291.

3.    Plaintiff Eagle Auto Body & Paint Service, Inc., is a Louisiana corporation authorized to do business in Louisiana and is doing business at 9193 Highway 23, Belle Chasse, Louisiana 70037.

4.     Plaintiff Reynolds Body Works, LLC, is a Louisiana limited liability company authorized to do business in Louisiana and is doing business at 605 Washington Street, Monroe, Louisiana 71201.

5.     Plaintiff Jay Smith, D/B/A Precision Collision is a Louisiana sole proprietorship doing business at 5266 Cypress Street, Suite 3, West Monroe, Louisiana 71291.

6.     Plaintiff Bradshaw's Body Shop, Inc., is a Louisiana corporation authorized to do business in Louisiana and is doing business at 2112 Farmerville Highway, Ruston, Louisiana 71270.

7.     Plaintiff Mitchell Body & Frame Shop, Inc., is a Louisiana corporation authorized to do business in Louisiana and is doing business at 705 Washington Street, Monroe, Louisiana 71201.

8.     Plaintiff Advantage Collision Center, Inc., is a Louisiana corporation authorized to do business in Louisiana and is doing business at 841 Bayou Gardens Boulevard, Houma, Louisiana 70364.

9.     Plaintiff Medine's Collision Center, LLC, is a Louisiana limited liability company authorized to do business in Louisiana and is doing business at 5275 Kincaid Avenue, Baton Rouge, Louisiana 70805.

10.     Plaintiff Robert Jordan, d/b/a Jordan's Automotive and Performance is a Louisiana sole proprietorship doing business at 111 N. Stanley Avenue, Monroe, Louisiana 71201.

11.     Plaintiff Jim's Body Shop, LLC, is a Louisiana limited liability company authorized to do business in Louisiana and is doing business at 1016 Bert Street, LaPlace, Louisiana 70068.

12.     Plaintiff Adams Collision, LLC, is a Louisiana limited liability company authorized to do business in Louisiana and is doing business at 9848 Parkins Road, Suite E, Baton Rouge, Louisiana 70810, and 13779 Airline Highway, Baton Rouge, Louisiana 70817.

13.     Plaintiff Big Easy Collision, LLC, is a Louisiana limited liability company authorized to do business in Louisiana and is doing business at 9433 Highway 23, Belle Chasse, Louisiana 70037.

14.     Plaintiff Le Jeune's Body Works, Inc., is a Louisiana corporation authorized to do business in Louisiana and is doing business at 238 South Kirkland, Brusly, Louisiana 70719.

15.     Plaintiff Brouillette's Paint & Body, LLC, is a Louisiana limited liability company authorized to do business in Louisiana and is doing business at 13504 K.C. Road, Gonzales, Louisiana 70737.

16.     Plaintiff C& C Automotive, LLC, d/b/a Miles Paint and Body, is a Louisiana limited liability company authorized to do business in Louisiana and is doing business at 6556 N. Foster Drive, Baton Rouge, Louisiana 70811.

17.     Plaintiff Guillory's Collision Center, Inc., is a Louisiana corporation authorized to do business in Louisiana and is doing business at 14289 Highway 44, Gonzales, Louisiana 70737.

18.     Plaintiff Complete Collision Center, LLC, is a Louisiana limited liability company authorized to do business in Louisiana and is doing business at 19511 Plank Road, Zachary, Louisiana 70791.

19.     Plaintiff Goldston's Auto Body, LLC, is a Louisiana limited liability company authorized to do business in Louisiana and is doing business at 410 Louisville Avenue, Monroe, Louisiana 71202.

20.     Plaintiff Johnnie's Paint and Body Shop, Inc., is a Louisiana corporation authorized to do business in Louisiana and is doing business at 1103 Broad Street, Lake Charles, Louisiana 70601.

21.     Plaintiff Krystal Auto Collision, Inc.,  is a Louisiana corporation authorized to do business in Louisiana and is doing business at 2115 California Drive, Bossier City, Louisiana 71111.

22.     Plaintiff Briley's Paint and Body Shop, Inc.,  is a Louisiana corporation authorized to do business in Louisiana and is doing business at 4003 East Broad Street, Lake Charles, Louisiana 70615.

23.     Plaintiff Bobby's Paint and Body Shop and Auto Sales, LLC,  is a Louisiana limited liability company authorized to do business in Louisiana and is doing business at 3331 West Pinhook Road, Lafayette, Louisiana 70508.

24.     Plaintiff Ginn's Automotive Frame Shop, LLC,  is a Louisiana limited liability company authorized to do business in Louisiana and is doing business at 5022 Highway 33, Ruston, Louisiana 71270.

25.     Plaintiff Taylor Auto Body, LLC, is a Louisiana limited liability company authorized to do business in Louisiana and is doing business at 6805 Highway 2, Farmerville, Louisiana, 71241.

26.     Plaintiff Battery Warehouse of Natchitoches, Inc., d/b/a Tony's Body Shop, is a Louisiana corporation authorized to do business in Louisiana and is doing business at 2170 Highway 6, Natchitoches, Louisiana 71457.

27.     Plaintiff Lloyd Lauw Collision Repair Center, LLC,  is a Louisiana limited liability company authorized to do business in Louisiana and is doing business 4105 East Napoleon Street, Sulphur, Louisiana 70663.

28.     Plaintiff Stubbs, Incorporated, d/b/a Expressway Paint and Body, is a Louisiana corporation authorized to do business in Louisiana and is doing business at 7000 Westbank Expressway, Marrero, Louisiana 70072.

29.     Plaintiff Country Club Auto Repair, Inc.,  is a Louisiana corporation authorized to do business in Louisiana and is doing business at 2115 Country Club Road, Lake Charles, Louisiana 70605.

30.     Plaintiff Final Touch Collision Repair, Inc., is a Louisiana corporation authorized to do business in Louisiana and is doing business at 2405 East Gauthier, Lake Charles, Louisiana 70607.

31.     Plaintiff Keith's Paint & Body, LLC, is a Louisiana limited liability company authorized to do business in Louisiana and is doing business at 5603 Common Street, Lake Charles, Louisiana 70607.

32.     Plaintiff Martin's Paint & Body, Inc.,  is a Louisiana corporation authorized to do business in Louisiana and is doing business at 5554 Highway 90 East, Lake Charles, Louisiana 70615, and 3001 Country Club Road, Lake Charles, Louisiana 70605.

33.     Plaintiff Antley's Collision & Repair Center, LLC,  is a Louisiana limited liability company authorized to do business in Louisiana and is doing business at 3728 Whites Ferry Road, West Monroe, Louisiana71291.

34.     Plaintiff David Profit, d/b/a Dave's Auto Body, is a Louisiana sole proprietorship doing business at 1108 Dellwood, Monroe, Louisiana 71202.

35.     Plaintiff Dominic Landry, d/b/a Dom's Paint & Body, is a Louisiana sole proprietorship doing business at 2603 Gerstner Memorial Drive, Lake Charles, Louisiana 70601.

36.     Plaintiff Christopher Robertson, d/b/a Chris's Auto Body Shop,  is a Louisiana sole proprietorship doing business at 330 Smith Street, West Monroe, Louisiana 71292.

37.     Plaintiff A.W. Staggs, d/b/a Staggs Auto Body Shop, is a Louisiana sole proprietorship doing business at 1300 Thomas Road, West Monroe, Louisiana 71292.

38.     Plaintiff Edward Duchesne, d/b/a Duchesne Paint & Body, is a Louisiana sole proprietorship doing business at 487 Cooley Cutoff Road, West Monroe, Louisiana71291.

39.     Plaintiff Kencade Enterprises, Inc., d/b/a Ken's Kustom Body Shop, is a Louisiana corporation authorized to do business in Louisiana and is doing business at 10180 Louisiana 17, Oak Grove, Louisiana 71263.

40.     Defendant State Farm Mutual Automobile Insurance Company is registered with the Louisiana Department of Insurance as an Illinois insurance company licensed to do business and is doing business within the State of Louisiana, This Defendant may be served with process through its registered agent for service of process,  the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, Louisiana, 70809.

41.     Defendant State Farm Fire and Casualty Company is registered with the Louisiana Department of Insurance as an Illinois insurance company licensed to do business and is doing business within the State of Louisiana, This Defendant may be served with process through its registered agent for service of process,  the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, Louisiana, 70809.

42.     Defendant State Farm General Insurance Company is registered with the Louisiana Department of Insurance as an Illinois insurance company licensed to do business and is doing

business within the State of Louisiana, This Defendant may be served with process through its registered agent for service of process,  the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, Louisiana, 70809.

43.     Defendant Progressive Security Insurance Company is registered with the Louisiana Department of Insurance as an Louisiana insurance company licensed to do business and is doing business within the State of Louisiana, This Defendant may be served with process through its registered agent for service of process, C.T. Corporation System, 5615 Corporate Boulevard, Suite 400B, Baton Rouge, Louisiana 70808.

44.     Defendant Paloverde Insurance Company is registered with the Louisiana Department of Insurance as an Indiana insurance company licensed to do business and is doing business within the State of Louisiana, This Defendant may be served with process through its registered agent for service of process, the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, Louisiana, 70809.

45.     Defendant Allstate Property and Casualty Insurance Company is is registered with the Louisiana Department of Insurance as an Illinois insurance company licensed to do business and is doing business within the State of Louisiana, This Defendant may be served with process through its registered agent for service of process,  the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, Louisiana, 70809.

46.     Defendant Allstate Fire and Casualty Insurance Company is registered with the Louisiana Department of Insurance as an Illinois insurance company licensed to do business and is doing business within the State of Louisiana. This Defendant may be served with process through its registered agent for service of process,  the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, Louisiana, 70809.

47.     Defendant Allstate Indemnity Company is registered with the Louisiana Department of Insurance as an Illinois insurance company licensed to do business and is doing business within the State of Louisiana. This Defendant may be served with process through its registered agent for service of process,  the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, Louisiana, 70809.

48.     Defendant Allstate Insurance Company is registered with the Louisiana Department of Insurance as an Illinois insurance company licensed to do business and is doing business within the State of Louisiana. This Defendant may be served with process through its registered agent for service of process,  the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, Louisiana, 70809.

49.     Defendant Louisiana Farm Bureau Casualty Insurance Company  is registered with the Louisiana Department of Insurance as an Louisiana insurance company licensed to do business and is doing business within the State of Louisiana. This Defendant may be served with process

through its registered agent(s) for service of process, Bob Warner, Jr., Ann M. Metrailer and Wynn Jacobs, 9516 Airline Highway, Baton Rouge, Louisiana 70815.

50.     Defendant GEICO Casualty Company  is registered with the Louisiana Department of Insurance as an Maryland insurance company licensed to do business and is doing business within the State of Louisiana. This Defendant may be served with process through its registered agent for service of process, the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, Louisiana, 70809.

50.     Defendant GEICO General Insurance Company  is registered with the Louisiana Department of Insurance as an Maryland insurance company licensed to do business and is doing business within the State of Louisiana. This Defendant may be served with process through its registered agent for service of process, the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, Louisiana, 70809.

51.     Defendant GEICO Indemnity Company  is registered with the Louisiana Department of Insurance as an Maryland insurance company licensed to do business and is doing business within the State of Louisiana. This Defendant may be served with process through its registered agent for service of process, the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, Louisiana, 70809.

52.     Defendant USAgencies Casualty Insurance Company, Inc., upon information and belief, is a Louisiana domestic corporation.  The designated address of its office is 7163 Florida

Boulevard, Baton Rouge, Louisiana, 70806 and may be served with process through its registered agent for service of process, Joseph G. Fisher, 7163 Florida Boulevard, Baton Rouge, Louisiana 70806.[1]

53.     Defendant Safeco Insurance Company of Oregon is registered with the Louisiana Department of Insurance as an Oregon insurance company licensed to do business and is doing business within the State of Louisiana.  This Defendant may be served with process through its registered agent, the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, Louisiana, 70809.

54.     Defendant Safeco Insurance Company of America is registered with the Louisiana Department of Insurance as a New Hampshire insurance company licensed to do business and is doing business within the State of Louisiana.  This Defendant may be served with process through its registered agent,  the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, Louisiana, 70809.

55.     Defendant USAA Casualty Insurance Company  is registered with the Louisiana Department of Insurance as a Texas insurance company licensed to do business and is doing business within the State of Louisiana.  This Defendant may be served with process through its registered agent,  the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, Louisiana, 70809.

---

[1]This Defendant is registered with the Louisiana Department of Insurance as a domestic insurance corporation.  However, there is no corporation named USAgencies Casualty Insurance Company, Inc., registered with the Louisiana Secretary of State.

56.     Defendant USAA General Indemnity Company is registered with the Louisiana Department of Insurance as a Texas insurance company licensed to do business and is doing business within the State of Louisiana.  This Defendant may be served with process through its registered agent,  the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, Louisiana, 70809.

57.     Defendant GoAuto Insurance Company is registered with the Louisiana Department of Insurance as a Louisiana insurance company licensed to do business and is doing business within the State of Louisiana.  This Defendant may be served with process through its registered agent, Gregory W. Tramontin, 7163 Florida Boulevard, Baton Rouge, Louisiana 70806.

58.     Defendant Safeway Insurance Company of Louisiana is registered with the Louisiana Department of Insurance as a Louisiana insurance company licensed to do business and is doing business within the State of Louisiana.  This Defendant may be served with process through its registered agent Richard E. Soileau, 200 W. Congress Street, Suite 850, Lafayette, Louisiana 70501.

59.     Defendant Liberty Mutual Fire Insurance Company is registered with the Louisiana Department of Insurance as a Wisconsin insurance company licensed to do business and is doing business within the State of Louisiana.  This Defendant may be served with process through its registered agent, the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, Louisiana, 70809.

60.     Defendant Liberty Mutual Insurance Company  is registered with the Louisiana Department of Insurance as a Massachusetts insurance company licensed to do business and is doing

business within the State of Louisiana.  This Defendant may be served with process through its registered agent, the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, Louisiana, 70809.

61.     Defendant Government Employees Insurance Company is registered with the Louisiana Department of Insurance as a Maryland insurance company licensed to do business and is doing business within the State of Louisiana.  This Defendant may be served with process through its registered agent, the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, Louisiana, 70809.

62.     Defendant Shelter Mutual Insurance Company is registered with the Louisiana Department of Insurance as a Missouri insurance company licensed to do business and is doing business within the State of Louisiana.  This Defendant may be served with process through its registered agent, the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, Louisiana, 70809.

63.     Defendant Shelter General Insurance Company  is registered with the Louisiana Department of Insurance as a Missouri insurance company licensed to do business and is doing business within the State of Louisiana.  This Defendant may be served with process through its registered agent, the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, Louisiana, 70809.

64.     Defendant Direct General Insurance Company of Louisiana  is registered with the Louisiana Department of Insurance as a Louisiana insurance company licensed to do business and is doing business within the State of Louisiana.  This Defendant may be served with process through its registered agent, Carolyn Nolte, 10225 Florida Boulevard, Baton Rouge, Louisiana 70815.

65.     Defendant AIG Property Casualty Company  is registered with the Louisiana Department of Insurance as a Pennsylvania insurance company licensed to do business and is doing business within the State of Louisiana.  This Defendant may be served with process through its registered agent, the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, Louisiana, 70809.

66.     Defendant Nationwide Mutual Insurance Company  is registered with the Louisiana Department of Insurance as an Ohio insurance company licensed to do business and is doing business within the State of Louisiana.  This Defendant may be served with process through its registered agent, the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, Louisiana, 70809.

67.     Defendant Sentry Insurance, A Mutual Company, is registered with the Louisiana Department of Insurance as a Wisconsin insurance company licensed to do business and is doing business within the State of Louisiana.  This Defendant may be served with process through its registered agent, the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, Louisiana, 70809.

17

68.     Defendant Sentry Select Insurance Company  is registered with the Louisiana Department of Insurance as a Wisconsin insurance company licensed to do business and is doing business within the State of Louisiana.  This Defendant may be served with process through its registered agent, the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, Louisiana, 70809.

69.     Defendant The Hanover Insurance Company  is registered with the Louisiana Department of Insurance as a New Hampshire insurance company licensed to do business and is doing business within the State of Louisiana.  This Defendant may be served with process through its registered agent, the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, Louisiana, 70809.

70.     Defendant The Hanover American Insurance Company is registered with the Louisiana Department of Insurance as a New Hampshire insurance company licensed to do business and is doing business within the State of Louisiana.  This Defendant may be served with process through its registered agent, the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, Louisiana, 70809.

71.     Defendant Hartford Accident and Indemnity Insurance Company is registered with the Louisiana Department of Insurance as a Connecticut insurance company licensed to do business and is doing business within the State of Louisiana.  This Defendant may be served with process

through its registered agent, the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, Louisiana, 70809.

72.     Defendant Hartford Casualty Insurance Company is registered with the Louisiana Department of Insurance as an Indiana insurance company licensed to do business and is doing business within the State of Louisiana.  This Defendant may be served with process through its registered agent, the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, Louisiana, 70809.

73.     Defendant Hartford Fire Insurance Company  is registered with the Louisiana Department of Insurance as a Connecticut insurance company licensed to do business and is doing business within the State of Louisiana.  This Defendant may be served with process through its registered agent, the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, Louisiana, 70809.

74.     Defendant Hartford Insurance Company of the Midwest  is registered with the Louisiana Department of Insurance as an Indiana insurance company licensed to do business and is doing business within the State of Louisiana.  This Defendant may be served with process through its registered agent, the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, Louisiana, 70809.

75.     Defendant Encompass Indemnity Company  is registered with the Louisiana Department of Insurance as an Illinois insurance company licensed to do business and is doing

business within the State of Louisiana.  This Defendant may be served with process through its registered agent, the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, Louisiana, 70809.

76.     Defendant Encompass Insurance Company of America  is registered with the Louisiana Department of Insurance as an Illinois insurance company licensed to do business and is doing business within the State of Louisiana.  This Defendant may be served with process through its registered agent, the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, Louisiana, 70809.

77.     Defendant Encompass Property and Casualty Company is registered with the Louisiana Department of Insurance as an Illinois insurance company licensed to do business and is doing business within the State of Louisiana.  This Defendant may be served with process through its registered agent, the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, Louisiana, 70809.

78.     Defendant Travelers Casualty and Surety Company is registered with the Louisiana Department of Insurance as a Connecticut company licensed to do business and is doing business within the State of Louisiana.  This Defendant may be served with process through its registered agent, the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, Louisiana, 70809.

79.     Defendant Travelers Casualty and Surety Company of America  is registered with the Louisiana Department of Insurance as a Connecticut company licensed to do business and is doing

business within the State of Louisiana.  This Defendant may be served with process through its registered agent, the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, Louisiana, 70809.

80.     Defendant Travelers Casualty Insurance Company of America  is registered with the Louisiana Department of Insurance as a Connecticut company licensed to do business and is doing business within the State of Louisiana.  This Defendant may be served with process through its registered agent, the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, Louisiana, 70809.

81.     Defendant The Travelers Indemnity Company of America  is registered with the Louisiana Department of Insurance as a Connecticut company licensed to do business and is doing business within the State of Louisiana.  This Defendant may be served with process through its registered agent, the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, Louisiana, 70809.

82.     Defendant The Travelers Indemnity Company of Connecticut  is registered with the Louisiana Department of Insurance as a Connecticut company licensed to do business and is doing business within the State of Louisiana.  This Defendant may be served with process through its registered agent, the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, Louisiana, 70809.

83.     Defendant The Travelers Indemnity Company  is registered with the Louisiana Department of Insurance as a Connecticut company licensed to do business and is doing business within the State of Louisiana.  This Defendant may be served with process through its registered agent, the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, Louisiana, 70809.

84.     Defendant Travelers Property Casualty Company of America  is registered with the Louisiana Department of Insurance as a Connecticut company licensed to do business and is doing business within the State of Louisiana.  This Defendant may be served with process through its registered agent, the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, Louisiana, 70809.

85.     Defendant Farmers Insurance Exchange  is registered with the Louisiana Department of Insurance as a California company licensed to do business and is doing business within the State of Louisiana.  This Defendant may be served with process through its registered agent, the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, Louisiana, 70809.

86.     Defendant United Fire and Casualty Company  is registered with the Louisiana Department of Insurance as a Texas insurance company licensed to do business and is doing business within the State of Louisiana.  This Defendant may be served with process through its registered agent, the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, Louisiana, 70809.

87.     Defendant United Fire & Indemnity Company   is registered with the Louisiana Department of Insurance as a Connecticut company licensed to do business and is doing business

within the State of Louisiana.  This Defendant may be served with process through its registered agent, the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, Louisiana, 70809.

88.     Defendant 21st Century North America Insurance Company  is registered with the Louisiana Department of Insurance as a New York insurance company licensed to do business and is doing business within the State of Louisiana.  This Defendant may be served with process through its registered agent, the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, Louisiana, 70809.

89.     Defendant 21st Century Centennial Insurance Company  is registered with the Louisiana Department of Insurance as a Pennsylvania insurance company licensed to do business and is doing business within the State of Louisiana.  This Defendant may be served with process through its registered agent, the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, Louisiana, 70809.

90.     Defendant America First Insurance Company is registered with the Louisiana Department of Insurance as a New Hampshire insurance company licensed to do business and is doing business within the State of Louisiana.  This Defendant may be served with process through its registered agent, the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, Louisiana, 70809.

91.     Defendant American National General Insurance Company is registered with the Louisiana Department of Insurance as a Missouri  insurance company licensed to do business and

is doing business within the State of Louisiana. This Defendant may be served with process through its registered agent, the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, Louisiana, 70809.

92.     Defendant American National Property and Casualty Company is registered with the Louisiana Department of Insurance as a Missouri  insurance company licensed to do business and is doing business within the State of Louisiana. This Defendant may be served with process through its registered agent, the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, Louisiana, 70809.

93.     Defendant eSurance Insurance Company is registered with the Louisiana Department of Insurance as a Wisconsin insurance company licensed to do business and is doing business within the State of Louisiana. This Defendant may be served with process through its registered agent, the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, Louisiana, 70809.

94.     Defendant Fireman's Fund Insurance Company is registered with the Louisiana Department of Insurance as a California insurance company licensed to do business and is doing business within the State of Louisiana. This Defendant may be served with process through its registered agent, the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, Louisiana, 70809.

95.     Defendant Imperial Fire and Casualty Insurance Company is registered with the Louisiana Department of Insurance as a Louisiana insurance company licensed to do business and

is doing business within the State of Louisiana.  This Defendant may be served with process through its registered agent, the Louisiana Secretary of State, Dirk Boudreaux and Scott A. Pitre, 4670 I-49 North Service Road, Opelousas, Louisiana 70570.

## JURISDICTION AND VENUE

96.     Original jurisdiction and venues exists in this Court pursuant to 28 U.S.C.  § 1331, as the Plaintiffs assert causes of action arising under the United States Constitution, and/or laws and treaties of the United States; and 28 U.S.C.  § 1391(b)(2), as it is the judicial district in which  a substantial  part of the events or omissions giving rise to the claim(s) occurred.

## FACTS

97.     Each individual Plaintiff is in the business of recovery and/or repair of motor vehicles involved in collisions.

98.     Each individual Defendant is an insurer providing automobile policies to consumers throughout the State of Louisiana and insureds/claimants having repairs performed by Plaintiffs located within the State of Louisiana.

**99.**     Each individual Plaintiff has done business at various times over the course of years with the Defendants' policyholders and claimants by providing to these policyholders and claimants motor vehicle collision repair service.  Each Defendant is individually responsible for payment for those repairs for their respective policyholders and claimants.

**100.**     Over the course of several years, the Defendants have engaged in an ongoing, concerted and intentional course of action and conduct with State Farm acting  as the spear head to

improperly and illegally control and depress automobile damage repair costs to the detriment of the Plaintiffs and the substantial profit of the Defendants.

101.     One of the methods by which the Defendants exert control over Plaintiffs, businesses is by way of entering program agreements with the individual Plaintiffs. Although each Defendant's program agreements have unique titles, such agreements are known generally and generically within the collision repair industry as direct repair programs ("DRPs").

102.     DRPs were presented  to the Plaintiffs as a mutually beneficial opportunity.  In exchange for providing certain concessions of price, priority and similar matters, the individual Defendants would list the body shop as a preferred provider.

103.     However, the concessions demanded by the individual Defendants in exchange for remaining on the direct repair program were not balanced by purported benefits.  The Defendants, particularly State Farm, have utilized these agreements to exert control over the Plaintiffs' businesses in a variety of manners, well beyond that of an ordinary business agreement.

104.     Defendants, particularly State Farm, have engaged in an ongoing pattern and practice of coercion and implied threats to the pecuniary health of the individual Plaintiff businesses in order to force compliance with unreasonable and onerous concessions. Failure to comply results in either removal from the  program (s) combined  with improper "steering" of customers  away  from  the Plaintiff s  business,  or  simply  punishment to decrease  the  number  of customers  utilizing  the Plaintiffs services.

**105.**    According to the Company Market Share Report, for year ending December, 2013, State Farm has captured 32.1% of the private passenger automobile insurance business within the market area of the state of Louisiana.  The market share for its closest competitor, Progressive, is only a bit more than one-third of State Farm's market share at 13.69%.  Allstate comes in third with a market share of 10.84%.

106**.**    The remaining defendants hold 5% or less of the Louisiana market share.  See copy of Louisiana Department of Insurance report, Private Passenger Automobile Liability and Physical Damage Combined, Calendar Year2013 attached hereto as Exhibit "1."

**107**.     Based upon the most recent information available, it is clearly apparent State Farm holds the unchallenged dominant position  within the automobile insurance industry in the Louisiana market.

**108.**    Collectively, the Defendants control nearly **75%** of the private passenger insurance market within the State of Louisiana.

109.     The vast majority of the Plaintiffs' business is generated by customers for whom the Defendants are responsible to pay repair costs. The insurance-paying customers account for between seventy and ninety-five percent of each shop's revenue.   Overall, courts have acknowledged the significant role played by insurance companies in funding automobile collision repairs, as well as the ability and market power to exert substantial influence and control over where consumers will take a wrecked car for repairs. See, e.g., *Allstate Ins. Co. v. Abbott*, 2006 U.S. Dist. LEXIS 9342 (N.D. Tex. 2006)(aff'd, *Allstate ins. co. v. Abbott,* 2007  U.S. App. LEXIS 18336 (5th Cir. 2007).

110.    As a general proposition, each DRP contains a general statement that the body shop will charge the respective insurance company no more for any particular repair than is the going market rate in the market area.  However, shops–including Plaintiffs–are not permitted to set their own rates.

111.    In order to establish the "market rate," State Farm utilizes what it terms "surveys." The geographical boundaries of the market area to be "surveyed" to establish the "market rate" are wholly within the control and direction of State Farm.

112.    Under the terms of its DRP, State Farm is not required to disclose any of the methods by which it establishes either the market area, the market rate, nor any other factual bases for its determination of the "market rate."  The agreement contains no provisions for independent and neutral verification of the data utilized, nor any oversight not directly within the control and direction of State Farm.   The shops are simply required to blindly accept State Farm's pronouncements regarding these matters.

113.     Previously this "survey" was conducted by sending written documents to the individual shops. The owner or designated representative of the shop would fill out the survey and return it to State Farm. In recent years, this process has been transferred to an electronic forum, State Farm's Business to Business portal, whereby the shops go online to complete the "survey."

114.     State Farm does not perform a survey in the traditional scientific sense, where information is obtained and results produced, establishing a baseline of all the shops' information. With respect to labor rates, as an example, State Farm's methodology does not represent what the

majority of shops in a given area charge, quite the contrary. State Farm's methodology lists the shops in a given market (as determined by State Farm) with the highest rates submitted at the top of the list and descending to the least expensive hourly rates at the bottom.

115.     State Farm then lists how many technicians a shop employs or the number of work bays available, whichever is lesser. Those are then totaled and State Farm employs it's "half plus one" method.  If, for  example, a State-Farm-determined market area  has  a total  of fifty (50) technicians or  work  bays, State  Farm's  "'half plus  one" math  equals twenty-six (26).   With that number, starting at the bottom of the shop list, State Farm  counts each shops' technicians or work bays  until the  "half plus  one' number is reached, twenty-six  in this example, and whatever that shop's rate happens to be is declared the market rate.

116.     There could, arguably, be some validity to this method, if it accounted for the variance in shop size, skill of technicians and other quality variables, which it does not. However, the greatest problem with this method is that State Farm can and does alter the labor  rates input  by the  shops, decreasing those arbitrarily deemed too high-or higher than State Farm wishes to pay.

117.     By altering  the rates entered,  particularly  those  of the larger shops, those with  the most technicians and/or work bays, State Farm manipulates the results to achieve a wholly artificial "'market rate." The results are therefore not that of an actual survey reflecting the designated market area but created from whole cloth by State Farm, particularly since State Farm determines the market area to be included.

118.    Furthermore, State Farm attempts to prohibit the shops from discussing with each other the information each has entered into the survey, asserting any discussion may constitute illegal price fixing.  State Farm selects the geographical boundaries of the "survey," and State Farm retains the right to alter the "survey" results and does so.  All without disclosure or oversight.

119.    Another   electronic   page on State Farm's business   portal is known as the Dashboard/Scorecard.  An example of State Farm's Dashboard is attached hereto for descriptive purposes as Exhibit "2."

120.    The Dashboard has substantive impact on several levels.  It serves as the record of an individual shop's survey responses.  It also provides a "report card" and rating of the individual shop based primarily upon three criteria: quality, efficiency and competitiveness.

121.    Within the quality criterion, the shop's reported customer satisfaction, customer complaints, and quality issues identified by an audit are scored.

122.    The efficiency criterion evaluates repair cycle time, number of bays a vehicle is in the shop, utilizing information input by the shops on the car's drop-off and pickup dates.

123.    The competitiveness criterion analyzes the average estimate for each State Farm repair, the cost of parts, whether a vehicle is repaired or replacement parts are utilized, the number of hours required to complete repair and similar matters.  An example of a State Farm score card is included within Exhibit "2," second page.

124.    In rating an individual shop, a total score of 1000 is possible. However, State Farm is under no obligation to disclose the weight or total number of points possible given to each factor

included in reaching the score, particularly those factors included under the competitiveness criterion. In fact, State Farm has refused to disclose its method of determining competitiveness even to its own team leaders.

125.    Due to this opacity, State Farm maintains complete and unsupervised authority to determine an individual shop's rating.  It is therefore possible for a shop to have no customer complaints, high customer satisfaction, no issues identified on an audit, complete compliance with all repair cycle time and efficiency requirements and yet still have a low rating.  It is also possible for a shop to have multiple customer complaints, poor customer satisfaction, numerous  issues identified on audit and complete failure to meet efficiency expectations and yet have a very high rating.

126.    The Dashboard rating is very important as a shop's rating determines its position on the list of preferred providers.  When a customer logs on to the State Farm web site seeking a repair shop, those shops with the highest ratings are displayed first.  A shop with a low rating will be at the bottom of the list often pages and pages down, making it difficult for a potential customer to find it.  If a customer calls State Farm, the representative provides the preferred shops beginning with those holding the highest rating.

## SUPPRESSION OF LABOR RATES

127.    Among the questions asked by the "survey" is the individual shop's hourly labor rate. This information is supposed to be provided by the shop and to accurately reflect that shop's labor

rate to allow State Farm to reach a "'market rate." The actual method of determining a "market rate" is described above.

128.     If the labor rate information received is unilaterally deemed unacceptable by State Farm, a State Farm representative will contact the shop and demand the labor rate be lowered to an amount State Farm wishes to pay.

129.     If the body shop advises a labor rate increase is required, State Farm representatives will inform the body shop  they are the only shop in the area who has raised its rates, therefore the higher rate does  not conform  with the "market  rate"  and will not be paid.

130.     At various points in time, State Farm has utilized this method of depressing labor rates, telling each shop they are the only one to demand a higher labor rate when in fact, multiple shops have attempted to raise their labor rates and advised State Farm of such.  By threatening shops with antitrust allegations, State Farm attempts to prevent shops from learning they are, in fact, not the only shop seeking to raise its rates and thus exposing State Farm's falsehoods and manipulation.

131.     Should a shop persist in its efforts to raise its labor rate, State Farm will take one or more of several "corrective" measures: it will go into the individual shop's survey responses and alter the labor rate listed without the knowledge or consent of the shop and use this lowered rate to justify its determination of the "market rate."  It will threaten to remove the shop from the direct repair program to coerce compliance.  It will remove the shop from the direct repair program.

132.     The net effect of this tactic is to allow State Farm to manipulate the "market rate" and artificially suppress the labor rate for the relevant geographic area, an area which, again, is

defined solely by State Farm and is not subject to either neutral verification or even disclosure.

133.    The remaining Defendants, intentionally and by agreement and/or conscious parallel behavior, specifically advised the P1aintiffs they will pay no more than State Farm pays for labor. These Defendants have not conducted any surveys of their own in which the Plaintiffs have participated to determine market rates. These Defendants have agreed to join forces with State Farm, the dominant market holder, and each other to coerce the Plaintiffs into accepting the artificially created less-than-market labor rates through intimidation and threats to the Plaintiffs financial ability to remain operating.

134.    Additionally, these payment ceilings are enforced across the board by all Defendants. Whether or not a shop is a member of a DRP, any DRP, is irrelevant.  Defendants enforce the self-interested, artificially created rates against all shops, simply refusing to pay any more than they choose while explaining it away as "market rate."

## SUPPRESSION OF REPAIR AND MATERIAL COSTS

135.    Through various methods, the Defendants have, independently and in concert, instituted numerous methods of coercing the Plaintiffs into accepting less than actual and/or market costs for materials and supplies  expended  in completing repairs.

136.    Some of these methods include but are not limited to: refusal to compensate the shops for replacement parts when repair is possible though strongly not recommended based upon the shop's professional opinion; utilizing used and /or recycled parts rather than new parts, even when new parts are available and a new part would be the best and highest quality repair to the

vehicle; requiring discounts and/or concessions be provided, even when doing so requires the shop to operate at a loss; de facto compulsory utilization of parts procurement programs.

137.    In addition to the above, the Defendants have repeatedly and intentionally failed to abide by minimum industry standards for auto repairs. Three leading collision repair estimating databases are in ordinary usage within the auto body collision repair industry:

a)      ADP;
b)      CCC; and
c)      Mitchell.

138.    These databases provide software and average costs associated with particularized types of repairs to create estimates. The estimates generated by these databases include the ordinary and customary repairs, repair time (labor) and materials necessary to return a vehicle to its pre-accident condition. These databases and the estimates they generate are accepted within the industry as reliable starting points, subject to the shop's expert opinions and the necessarily present variability between the "best-case scenario"[2] presented by the procedure databases and the actual needs of a particular repair.

139.    Over the course of years, the Defendants have admitted the accepted position of the estimating databases within the industry, but have nonetheless engaged in a course of conduct of

---

[2]      The database procedure pages set forth the anticipated repairs, repair times and materials for repair of an undamaged vehicle using original manufacturer equipment which are specifically designed to fit that particular vehicle.  Wrecked cars are obviously not undamaged  and original manufacturer parts are not always used, particularly with repairs for which State Farm and the other Defendants are responsible for payment, which can substantially affect repair procedures required, repair times and necessary materials.

refusing to make full payment for procedures and materials. In many instances the Defendants will refuse to allow the body shop to perform required procedures and processes, thereby requiring the Plaintiffs to perform less-than-quality work or suffer a financial loss.

140.    A non-exhaustive list of procedures and processes the Defendants refuse to pay and/or pay in full is attached hereto as Exhibit "3."

141.    At the same time, Defendants selectively rely upon and assert the definitive nature of these databases when doing so is to their respective financial advantage.  For example, when a particular repair requires twenty hours of labor to complete but the database estimate notes fifteen hours of labor is standard for that type of repair, Defendant will cite the database estimate and pay for only fifteen hours of labor time.

142.    One Defendant, Safeco, has even stated as such to a Plaintiff in very specific and clear terms.  In June, 2014, Johnny Hurt, who holds a management position with Safeco, stated to Plaintiff Bradshaw Body Shop that payment according to procedures pages had been discussed just the previous week at a regional meeting and the corporate direction given was that procedure pages would only be paid when it was financially advantageous to the insurer to do so.

143.    With respect to materials, while it is inarguable that materials must be expended to repair automobile collisions, the Defendants simply refuse to pay for them, asserting materials are part of the cost of doing business.   This is the Defendants' position even when the authoritative databases specifically state that such materials are not included in the repair procedure pages.

144.    The only partial exception to this practice is paint.  While paint costs are factored into

the amount the Defendants will pay, it is calculated via a formula which compensates the shops for only half the actual cost on average.  The Defendants' method of calculating paint payment does not take into account the type of paint needed/used, the requirement that paint be mixed to match  the existing color of the vehicle, the actual amount of paint required  to complete the job, the type of vehicle involved or any other factor. Defendants pay only based upon arbitrary caps, self-established and unrelated to actual costs to the Plaintiffs.

**145.**   This continued refusal and/or failure to compensate Plaintiffs for ordinary and customary repairs and materials costs places Plaintiffs in the untenable position of either performing incomplete and/or substandard repairs and thus breaching their obligation to automobile owners to return vehicles to pre-accident condition, or performing labor  and expending  materials without proper compensation and thereby jeopardizing continuing viability of the business enterprise.

146.   Although occurring in Mississippi, and set forth here for illustrative purposes, it was these very concerns that prompted a meeting in April, 2013, between many of the Plaintiffs in a companion case, *Capitol Body Shop, et al v. State Farm Mutual Automobile Association*, Cause No. 3:14CV12, Southern District of Mississippi, representatives of State Farm and the Mississippi Department of Insurance. Present on behalf of State Farm were Tim Bartlett, Estimatix team leader, John Findley, Estimatix section manager, and Steve Simkins, State Farm counsel for Mississippi and Alabama.

147.   At this meeting, members of the automobile collision repair industry expressed their dissatisfaction and concerns with the very practice of refusing to compensate fully and fairly for

repairs that were performed and State Farm's inconsistent application of the database estimating software, i.e., utilizing database estimates only when it is in State Farm's financial best interests to do so.

148.    State Farm representative Tim Bartlett acknowledged (before witnesses) that repairs and subsequent payment for those repairs should be consistent with the estimates prepared through the database software. Mr. Bartlett assured those present, and the Department of Insurance representative that it would begin abiding by those database estimates and stated it would raise the matter at its insurance industry meetings, held locally approximately once a month.

149.    Also at that meeting, Mr. Simpkins asked if insurance representatives might be permitted to attend the meetings of the Mississippi collision trade association. The association representative present for the meeting, John Mosley, invited State Farm to attend those meetings if State Farm would permit members of the association to attend the insurance meetings. Mr. Simkins refused.

150.    Despite the assurances given the body shop representatives and the Department of Insurance at this meeting, State Farm has failed to perform in either Mississippi or Louisiana. State Farm, and the other Defendants in collusion with State Farm, have continued to refuse to make payment and/or full payment for necessary and proper repairs, labor and materials.

151.    Defendant State Farm also imposes restrictions upon the Plaintiffs' ability to obtain and utilize quality replacement parts and materials. As part of its DRP agreement, State Farm asserts it has the unilateral authority to enter into separate agreements with manufacturers, distributors or

suppliers of automotive parts, supplies or materials.

**152.**     Despite the fact that the shops have no involvement in the negotiation of those separate agreements, they are de facto required to abide by the pricing agreements reached, even if they do not make purchases with those vendors.  Although presented as an option to participate, the optional language is rendered nugatory by additional language which requires the shops to accept as payment only that amount for which the parts and /or materials could have been obtained through those agreements.  Participation or lack thereof is therefore completely meaningless and the optional language is illusory.

**153**.     Moreover, shops are required to "stack" this purportedly optional usage of separate agreements with other discounts required elsewhere within the agreement.  Thus, the limitation on payment, refusal to compensate for nearly all materials and the compelled discounts end in a shop operating at or near a loss for each repair.

154.     Again, State Farm makes no distinction between DRP shops and non-DRP shops. Even the illusory promise of optional participation is absent. State Farm has enacted a wide-spread procedure of paying only the least amount for which a part *could* be obtained whether or not the least expensive part is appropriate or even purchased. Thus, if a bumper *could* be purchased from  a vendor somewhere for $200.00, State Farm will only pay $200.00, even if the $200.00 bumper does not fit correctly and is not used.

**155.**     Though led by State Farm as the dominant market share holder, all Defendants have agreed to and/or consciously parallel the compensation ceilings established by State Farm solely for

their own profit.

## STEERING

156.     The Defendants regularly and routinely engage in "steering" in order to punish the noncompliant Plaintiff shops. Through several common methods, the Defendants  will "steer" insureds and/or claimants to favored, compliant shops through misrepresentation, insinuation, and casting  aspersions upon the business  integrity and  quality of disfavored repair centers.

157.     Examples of this practice include advising that a particular chosen shop is not on the preferred  provider list, advising that quality issues have arisen with that particular shop, that complaints have been  received about  that particular shop from other  consumers, that the shop charges more than any other shop in the area and these additional costs will have to be paid  by the consumer, that repairs at the disfavored  shop will take much longer than at other, preferred  shops and the consumer will be responsible for rental car fees beyond a certain date, and that the Defendant cannot guarantee the work of that shop as it can at other shops.

158.     These statements have been made about certain Plaintiffs without any attempt to ascertain the truth thereof.  Not only that, some of the ills recited which implicitly criticize the shops are wholly attributable to the insurer itself. For instance, the statement that repairs will take longer at a disfavored shop--consumers are not told that the delay in beginning repairs is due to the insurer's decision to delay sending an adjuster/appraiser to evaluate the damage, a decision completely and wholly within the control of the Defendants. Asserting the shops charges more than other shops is often not a function of what the shop actually charges but the Defendants' refusal to pay, also a factor

wholly and completely within the control of the respective Defendant.  Yet both are conveyed to the public as problems with the shop.

159.    The most egregious of these statements, that the Defendant cannot guarantee the work of the shop, is particularly misleading as none of the Defendants offer a guarantee for repair  work. Instead, the Defendants require the body shops to provide a limited lifetime guarantee on work performed.  In the event additional work is required, the body shop is required to do so without any additional payment, or to indemnify the insurer for costs if work is performed at another shop.

160.    Thus, while it may be a facially truthful statement that an insurer cannot guarantee the work of a particular shop, the clearly understood  inference is that it can and will guarantee the work of another, favored shop, which is simply not true.

161.    The Defendants specifically and maliciously target the Plaintiffs as retribution for noncompliance with the fixed prices unilaterally imposed by the Defendants.  The actions are intentional, improper and conducted with deliberate malice.

## INTENTIONAL NATURE OF DEFENDANTS' CONDUCT

l62.    In 1963, a consent decree was entered in *United States vs. Association of Casualty and Surety Companies*, et al, Docket  No. 3106, upon complaint filed in the Southern District of New York. The allegations of that complaint included violations of Sections 1 and 3 of the Sherman Act, also known as the Sherman Antitrust Act.  A copy of this Decree is attached hereto as Exhibit "4."

163.    Specific actions supporting those allegations included: ( l) requiring repair rather than replacement of damaged  parts; (2)  replacing damaged  parts  with used rather  than new parts: (3)

obtaining  discounts on new replacement parts: (4) establishing strict labor  time allowances;   (5) suppressing the hourly labor rate;  (6) channeling auto repairs  to those repair shops which would abide by the insurer estimates and boycotting  those which refused.   The complaint further alleged a conspiracy and combination in unreasonable restraint of trade and commerce for these practices.

**164**.   The Consent Decree order provided the following relief: (1) enjoined the defendants from  placing into  effect  any  plan,  program  or  practice  which has the  purpose  or  effect  of  (a) directing, advising or otherwise suggesting  that any person  or  firm do  business or  refuse  to do business with any independent or dealer franchised automotive repair shop with respect to the repair of damage to automobile vehicles; (2) exercising any control over the activities of any appraiser of damages to automotive vehicles; (3) <u>fixing, establishing, maintaining or otherwise controlling the prices to be charged  by independent or dealer franchised  automotive repair shops for the repair  of damage to automotive vehicles  or for replacement parts or labor in connection therewith, whether by coercion, boycott or intimidation or by the use of flat rate or parts manuals or otherwise.</u>

**165**.   Whether or not any current Defendant is legally bound by this Decree, the actions described in the present cause fall squarely within those prohibited by the Decree.  The Decree has been "on the books" for fifty years and is well-known within the insurance industry.  Despite this, the Defendants have willfully ignored actual knowledge of the terms of the Consent Decree.

**166**.  Being known, it can only be said that Defendants were fully aware their actions, plans, programs, and combinations and/or conspiracy to effectuate the same prohibited actions have been

willful, intentional and conducted with complete and reckless disregard for the rights of the Plaintiffs.

## CLAIMS FOR RELIEF

## COUNT ONE: VIOLATION OF LOUISIANA UNFAIR TRADE PRACTICES ACT

167. Louisiana Revised Statute § 51:1405, et seq., prohibits unfair or deceptive acts or practices in the conduct of any trade or commerce. An act or practice violates this statute it offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious. The policy behind the enactment of the Louisiana Unfair Trade Practices Act ("LUTPA") is to protect consumers and to foster competition.

168. Defendants' actions as set out above violate this statute:

(A) refusal to pay and/or fully pay for necessary and required procedures and processes to return a vehicle to its pre-accident condition. This places the consumer at risk of physical injury or death while causing substantial pecuniary harm to the Plaintiffs;

(B) utilizing used and/or recycled parts in contravention of the repair shops' expert professional opinion in order to save money and thereby compromising the safety of both the driver and passengers as well as all other members of the traveling public;

(C) requiring shops to purchase replacement parts of unknown manufacture, reliability, and/or quality merely because it is the least expensive option, again placing consumers at risk of physical injury or death while causing substantial pecuniary harm to the Plaintiffs;

169. The Defendants' repeated and ongoing breaches of the statute have caused financial harm to the Plaintiffs, exposed the Plaintiffs to potential liability for damages and\or injuries resulting from failure of improper replacement parts, failure to replace rather than repair parts when

appropriate, and failure of poor quality parts of unknown or uncertain provenance.  These actions violate public policy, place the traveling public at risk, and substantially impede competition.

## COUNT TWO:  UNJUST ENRICHMENT

**170.**    Plaintiffs incorporate and restate by reference herein all allegations set forth above.

**171**    .    A quasi-contract, or constructive contract, is based on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another. In this respect the terms "unjust enrichment" and "restitution" are modern  designations  for the doctrine  of "quasi– contracts" and the basis for an action for unjust enrichment  lies in a promise, which is implied  in law, that one will pay to the person entitled thereto which in equity and good conscience is his.

**172**    .    It is an obligation created by law, in the absence of any agreement, when and  because the  acts of  the  parties  or  others  have  placed  in the  possession  of  one  person  money  under circumstances  that in equity and good conscience  ought not be retained and which in justice  and fairness belongs to another.

**173.**    In the present case, Defendants' insureds and claimants entrusted the Plaintiffs with the full and complete repair of their vehicles, the cost of which it is incumbent upon the Defendants to pay. Statute requires the Defendant pay for the proper and fair repair of those vehicles. An obligation was thus created to provide payment to Plaintiffs for their work and expended materials.

**174**    .    By failing to make payment and\or full payment for the necessary and reasonable costs of repair, Defendants have obtained or retained money which, in equity and good conscience, rightfully belongs to the Plaintiffs.

43

## COUNT THREE:  TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

**175.**   Plaintiffs incorporate and restate by reference herein all allegations set forth above.

**176**.   Tortious interference with business relations occurs when a defendant engages in some act with malicious intent to interfere and injure the business of another.  (*Sandolph v. P & L Hauling Contractors, Inc.,* 430 So. 2d 102, 103 (La. App. 5 Cir.1983).

**177.**   The Defendants have repeatedly engaged in malicious actions and a course of conduct designed to interfere with and injure the Plaintiffs' business relations and prospective business relations. The Defendants have repeatedly steered and attempted to steer customers away from the Plaintiffs' respective businesses through their repeated campaign of misrepresentation of facts, failure to verify facts damaging or tending to cause damage to the Plaintiffs business reputations before conveying the same to members of the public, implications of poor quality efficiency, poor quality efficiency, poor business ethics and practices, and unreliability.

**178.** The purpose of these actions was twofold: to punish the Plaintiffs who complained about or refused to submit to the various oppressive and unilateral price ceiling the Defendants were enforcing upon them, and to direct potential customers of the Plaintiffs to other vendors who would comply with the maximum  price ceilings unilaterally imposed  by the Defendants.

**179.**   The Plaintiffs have been damaged by the Defendants malicious and intentional actions. Plaintiffs are therefore entitled to compensation for these damages.

## COUNT FOUR: QUASI-ESTOPPEL

180.   Quasi-estoppel is an equitable principle. This long-standing doctrine is applied to preclude contradictory positions by preventing a person from asserting to another's disadvantage, a right inconsistent with the position previously taken.

181.   The Defendants have relied upon and asserted the validity\authority of the databases, supra, when it has been to their respective advantage. Indeed, Defendant Safeco admitted outright it would abide by the minimum standards set out by the databases only when it was to their financial advantage.  While Defendant Safeco has been the most candid about its inconsistent utilization of the databases, all Defendants have refused to compensate and\or fully compensate Plaintiffs for materials expended and work performed, including labor and labor rates, upon reliance of these very same guides, claiming they are unnecessary to complete the work at hand.

182.   Defendants' inconsistent and contradictory application of, or refusal to abide by, the guidelines of the industry databases has created an atmosphere of doubt, uncertainty and distrust, all to the severe detriment of Plaintiffs while, at the same time, seeking to obtain every improper advantage for Defendants themselves.

183.   Plaintiffs therefore seek to have the Defendants estopped from denying the applicability and reasonableness of the baseline procedures and costs set forth in the industry databases henceforth and make full payment for the necessary reasonable costs of repairs made for the benefit of Defendants' insureds and claimants.

**COUNT FIVE:  CONVERSION**

**184.**    Plaintiffs incorporate and restate by reference herein all allegations set forth above.

**185.**    Plaintiffs have performed necessary work and expended appropriate labor and materials for which Defendants have refused to make payment and\or full payment, even after demand for same.

**186.**    Defendants' action constitutes a conversion of Plaintiffs' monies.

**187.**    Defendants are therefore wrongfully in possession of monies which should have been expended to pay repair bills of their policyholders and claimants, specifically set aside for that purpose, and which rightfully belongs to Plaintiff as a result of Plaintiffs performing necessary reasonable and customary repairs to vehicles.

**COUNT SIX: VIOLATIONS OF THE SHERMAN ACT-PRICE-FIXING**

**188.**    Plaintiffs incorporate and restate by reference herein all allegations set forth above.

**189.**    The Sherman Act prohibits contracts, combinations or conspiracies in restraint of trade, 15 U.S.C.   §1. Such agreements are illegal if (1) their purpose or effect is to create an unreasonable restraint of trade, or (2) they constitute a per se violation of the statute.

**190.**    Through parallel actions, and\or explicit agreement, the Defendants have formed and engaged in a vertical conspiracy or combination to impose maximum price limits upon the Plaintiffs for their products and services.

**191.**    The United States Supreme Court has noted that agreements to fix maximum prices, no less than those to fix minimum prices, cripple the freedom of traders and thereby restrain their

ability to sell in accordance with their own judgment.  *Kiefer-Stewart Co. Vs.  Joseph E. Seagram and Sons, Inc.*, 340 U.S. 211 (1951).

192.   The Defendants and co-conspirators have engaged in combination and conspiracy in unreasonable restraint of trade and commerce in the automobile damage repair industry.

193.    The aforesaid combination and/or conspiracy has consisted of a continuing agreement in concert of action among the Defendants and co-conspirators to control and suppress automobile damage  repair costs, automobile material  repair costs through coercion and intimidation of these shops.

194.    Evidence of this conspiracy or combination include, but is not limited to, admission before witnesses that members of the insurance industry meet regularly to discuss such matters in and amongst themselves but refuse to allow members of the auto collision  repair industry to attend those meetings, explicit statements by Defendants that they ·will conform to State Farm's unilaterally imposed payment structure, admitting the baseline application  of the industry database but failing to conform to that minimum standard, followed by the uniformity of action by all Defendants.

195.    The aforesaid offenses have had, among others, the effect of eliminating competition within the automobile damage repair industry, elimination of some shops from a substantial segment of  the automobile damage repair industry for refusing or attempting to refuse  the Defendants' arbitrary price ceilings, and subjecting repair shops to collective  control  and supervision of prices by the Defendants and co-conspirators.

**196**.   Neither the Plaintiffs, nor other members of the auto collision repair industry, are able to engage in competitive business practices as the Defendants have effectively and explicitly determined what their business practices will be.

**197.**   The Defendants actions individually and certainly collectively have violated federal law and directly caused the Plaintiffs to incur substantial damages. Defendants are continuing and will continue said offenses unless the relief herein prayed for is granted.

## COUNT SEVEN: VIOLATION OF THE SHERMAN ACT-BOYCOTT

**198.**   Plaintiffs incorporate and restate by reference herein all allegations set forth above.

**199.**   The United States Supreme Court has repeatedly held that boycotts constitute a violation of the Sherman Act, 15 U.S.C. §1. "'Boycott' has been defined within the antitrust law context as "pressuring a party with whom one has a dispute by withholding, or enlisting others to withhold, patronage or services from the target." *St. Paul Fire & Marine Ins. Co. v. Barry*, 438 U.S. 531, 541 (1978).

**200**.   The Defendants have engaged, and continue to engage, in boycott and boycotting activity through their repeated actions of steering customers away from the Plaintiffs through allegations and intimations of poor quality work, of poor efficiency in performing work, of questionable business practices, of overcharging, impugning integrity, and similar actions so as to withhold and\or enlist others to withhold patronage from the Plaintiffs.

**201.**   This boycott was specifically designed to pressure, intimidate, and/ or coerce the Plaintiffs into complying with the maximum-price limitations unilaterally conceived by Defendant

State Farm and agreed to collusively by the other Defendants.

**202.**   It is irrelevant for purposes of the Sherman antitrust boycott activity that the Plaintiffs and Defendants are not direct competitors within the same industry.  The United States Supreme Court has directly addressed this issue in *St. Paul Fire and Marine Insurance Company*, supra, stating, "[B]oycotters and the ultimate target need not be in a competitive relationship with each other."  438 U.S. at 543.

**203.**   The enlistment of third parties as a means of compelling capitulation by the boycotted group has long been viewed as conduct supporting a finding of unlawful boycott. *Id.*

**204.**   In the present matter, the Defendants have engaged in not only a boycott, but have regularly, routinely and purposefully enlisted the aid of unwitting third parties in carrying out their boycott through their intentional acts of steering those customers away from the Plaintiffs.

**205.**   Defendants' boycott was created and carried out with the sole purpose and intent of financially coercing and threatening the Plaintiffs into complying with the Defendants price caps.

**206.**    The Defendants actions are violation of federal law and have directly caused the Plaintiffs to incur substantial damages. Defendants are continuing and will continue said offenses unless the relief requested herein is granted.

**PRAYER FOR  RELIEF**

**207.**   Plaintiffs incorporate and restate by reference herein all allegations set forth above.

**208.**   As a result of the Defendants' actions, Plaintiffs have been substantially harmed and will continue to suffer unless the relief requested herein is granted.  The Plaintiffs therefore pray for

the following relief:

A.    Compensatory damages for all non-payment and underpayment for work completed on behalf of the Defendants' insureds and claimants as determined by a jury.

B.    Compensation for the lost revenue through artificial suppression of labor rates as determined by a jury.

C.    Damages sufficient to compensate   Plaintiffs for lost business opportunities as determined by a jury.

D.    Treble damages, reasonable attorneys' fees and costs for violations of the Sherman Act, as required under 15 U.S.C. § 15.

E.    Injunctive relief prohibiting the Defendants from further engaging in any of the following:

(l)    Placing into effect any plan, program or practice which has the purpose or effect of:

(a)    directing, advising or otherwise suggesting that any person or firm do business or refuse to do business with any Plaintiff automotive repair shop with respect to the repair of damage to automobiles.

(b)    fixing, establishing or otherwise controlling the prices to be charged by independent or dealer franchised automotive repair shops for the repair of damage to automobiles or for replacement parts or labor in connection therewith whether by coercion, boycott or intimidation, or by the use of flat rate or parts manuals or otherwise.

(2)    Placing into effect any plan, program or practice which explicitly requires or has the purpose or effect of requiring Plaintiffs to participate in any parts procurement program.

(3)    Providing untruthful and/or unverified   information to customers or third

50

persons regarding the quality, cost, efficiency or reputation of any Plaintiff ("steering").

(4)    Prohibiting Defendant State Farm from altering or amending any Plaintiff response to its market labor rate "survey" without the express written permission of the affected Plaintiff.

F.    Punitive and/or exemplary damages sufficient to punish Defendants for their intentional acts and deter each Defendant and similar entities from pursuing this improper conduct in the future.

G.    Pre- and post-judgment interest.

H.    Any additional relief the Court deems just and appropriate.

## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Plaintiffs demands a judgment against Defendants in an amount sufficient to fully compensate Plaintiff for damages incurred as a result of Defendant's conduct with appropriate pre- and post-judgment interest, equitable relief as set forth above, punitive damages, attorneys' fees, expenses, costs and any other relief the Court deems the Plaintiffs entitled.

Respectfully submitted, this the 8TH day of JULY, 2014.

**PARKER AUTO BODY, INC., ET AL.**

BY:   /S/ Daniel P. Parker
        DANIEL P. PARKER
        Bar Roll No. 10313
        2503 Ferrand Street
        Monroe, LA  71201

TEL: (318) 322-7373
FAX: (318) 322-1461

BY:      /s/ Kevin Alexander
          Kevin Alexander
          Bar Roll No. 24933
          2107 Jasmine St.
          Monroe, LA  71201
          TEL:  (318) 855-5324
          FAX: (318) 855-5694

BY:      /s/ Michael Dubos
          Michael Dubos
          Bar Roll No. 23944
          Breithaupt, Dunn, DuBos, Shafto & Wolleson, LLC
          Community Trust Bank Building
          1800 Hudson Lane, Suite 200-A
          Monroe, LA  71201
          TEL:  (318) 322-1202
          FAX: (318) 322-1984

          ATTORNEYS FOR PLAINTIFFS