## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**PARKER AUTO BODY, INC., et al**                      **PLAINTIFFS**

**VS.**                                      **CASE NO.: 6:14-CV-6004**
                                             **MDL NO.: 6:14-MD-2557**

**STATE FARM MUT. AUTO. INS. CO., et al**              **DEFENDANTS**

---

### PLAINTIFFS' OBJECTIONS TO MAGISTRATE'S REPORT AND RECOMMENDATION

---

Come now, Plaintiffs in the above-captioned cause and serve this, their Objections to Magistrate's Report and Recommendation and state to the Court the following:

The Report and Recommendation issued as Document No. 167 addresses only the state law claims set forth in the Plaintiffs' amended complaint ("complaint" or "amended complaint"). Each of these are discussed below.

1.    <u>The grounds for dismissal conflict with the prior Report and Recommendation and order of the Court in violation of the law of the case</u>

In addressing prior motions to dismiss, a Report and Recommendation was issued which was adopted by the Court. In that prior Report, the magistrate recommended dismissal of the tortious interference claim for failing to set out specific business relationships with which the Defendants interfered. The Report did not mention problems with group pleading, shotgun pleading, or any other matter raised for the first time in the current Report and Recommendation. See Doc. No. 109, pg. 15-16.

In adopting the Report, the Court agreed this was the only purported deficiency. See Doc. No. 118, pg. 3.

An issue decided at one stage of a case is binding at later stages of the same case. *Royal Ins. Co. v. Latin Am. Aviation Servs., Inc.*, 210 F.3d 1348, 1350 (11th Cir. 2000), *United States v. Escobar-Urrego*, 110 F.3d 1556, 1560 (11th Cir. 1997).

The current Report lists a host of purported deficiencies which were not mentioned in the previous Report or Order. The Plaintiffs therefore did not address any of these purported deficiencies, relying as they did upon the Court's order in framing the amended complaint. It would be a breach of the court's integrity as well as Plaintiffs' justifiable reliance upon prior rulings to allow dismissal upon grounds of pleading deficiencies the Plaintiffs had no notice of prior to issuance of the current Report.

It would be particularly inequitable in the current case as "problems" identified in the current report were previously argued by the Defendants and the Court either declined to rule in their favor or declined to address them at all. Plaintiffs had no reason to anticipate the "new" deficiencies under the circumstances.

Parties are entitled to rely upon the orders of the court. "To hold otherwise would be to permit parties the option of deciding which orders to obey, or conversely to condemn parties to the instability of guessing which orders to abide and which to ignore. This will not do." *In re Demos*, 57 F.3d 1037, 1039 (11th Cir. 1995). See also, *In re Moss*, 258 B.R. 391, 399 (Bankr. W.D. Mo.) aff'd, 266 B.R. 408 (B.A.P. 8th Cir. 2001) aff'd, 289 F.3d 540 (8th Cir. 2002) ("For the integrity of the courts and the bankruptcy process, it is imperative that parties be able to rely on orders of the court.").

The amended complaint did exactly as directed. Throughout the complaint, the Plaintiffs aver each Defendant engaged in conduct constituting tortious interference when a consumer identified a Plaintiff as the repair shop chosen to perform repairs. The amended complaint makes

clear that each Defendant engaged in this interference with respect to each Plaintiff, when a Plaintiff was identified as the chosen repair facility.

The Plaintiffs therefore complied with the Court's direction "to specify which Defendants interfered with which Plaintiffs."  The problem lies not in failure to comply with amendment directions, but with the Court's refusal to accept the facts alleged.  The Court simply refuses to believe that each and every Defendant tortiously interfered with each of the Plaintiffs' business prospects.  Respectfully, the difficulty is therefore a breach of the Court's duty to accept the averments of the complaint as true, not a pleading deficiency on the part of the Plaintiffs.

If the Court wishes the Plaintiffs to create separate, repetitive paragraphs asserting the actions of each Defendant with respect to each Plaintiff, they will do so.   However, the Plaintiff cannot identify each and every specific instance of interference as that is information solely within the possession and control of the Defendants themselves.  Moreover, such a demand violates federal pleading requirements.

As the law of the case and substantial issues of judicial integrity are implicated in the Report, Plaintiffs respectfully submit dismissal is wholly inappropriate.  If the Court determines the complaint is still somehow lacking, despite compliance with the previous order, the Plaintiffs request explicit instructions on how the Court requires the facts to be alleged.

## UNJUST ENRICHMENT

The Report recommends dismissing the equitable unjust enrichment claim on several grounds, the majority of which-according to the Report-flow from the purported failure of Plaintiffs to allege they conferred a benefit upon the Defendants.  Respectfully, this conclusion violates a number of Rules, Supreme Court and Louisiana state authority and factually misrepresents the contents of the complaint.

2.     The Report erroneously relies upon incorrect state law to determine Louisiana unjust enrichment claims are insufficiently pled

In reaching the conclusion the unjust enrichment claim must be dismissed, the Report relies not once, but twice, upon Florida law to decide that Defendants have received no benefit.  The Report quotes Florida authority not once, but twice, and utilizes the language of Florida law throughout its discussion of the unjust enrichment claim as the reasons for finding the unjust enrichment claim untenable.  Clearly, the Report analyzed the unjust enrichment claim under Florida law.

The Report bolsters its opinion that if presented with the question, it was believed this is how Louisiana would rule.  However, such an *Erie* guess is only authorized when the issue of state law has not been reached by a state's highest court.  *Provau v. State Farm Mut. Auto. Ins. Co.*, 772 F.2d 817, 820 (11th Cir. 1985).  Where intermediate appellate authority is available, the district court is required to apply those decisions, absent compelling indicators the state supreme court would rule otherwise.  *Id.*

In the present case, the Louisiana appellate courts, supreme and intermediate, <u>have</u> ruled, both explicitly and implicitly.  The Report takes no heed of this authority, nor does it acknowledge or discuss the limitations on making an *Erie* guess- the non-discretionary showing of the absence of state law to determine a question of state law <u>before</u> the court may presume to create state law.  It simply decided to create law for the State of Louisiana in contradiction of existing state law.

This is reversible error.  The claim brought is brought under Louisiana law, not Florida law.  Florida law may not be applied to determine any part of a Louisiana state law claim.  It simply may not be done.

> State law is to be applied in the federal as well as the state courts and it is the duty of the former in every case to ascertain from all the available data what the state law

> is and apply it rather than to prescribe a different rule, however superior it may
> appear from the viewpoint of 'general law' and however much the state rule may
> have departed from prior decisions of the federal courts.

*West. v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237, 61 S. Ct. 179, 183, 85 L. Ed. 139 (1940).

It is therefore wholly irrelevant how Florida defines unjust enrichment and what actions constitute a benefit or lack thereof under Florida law.  It is wholly irrelevant whether the court believes Florida law is the better approach.  It is clear error for the court to dismiss a Louisiana state law claim based upon Florida law analysis, either explicitly as the Report sets out or implicitly.

The entirety of the Report's recommendation is based upon a purported failure of benefit to the Defendants and the entirety of the Report's findings regarding benefit are predicated upon application of Florida law and Florida-law analysis.  The entirety of the Report's conclusions are therefore irretrievably flawed.

3. <u>Benefit to the defendant is not an element of an unjust enrichment claim under Louisiana state law</u>

The Report concludes the unjust enrichment claim must be dismissed because Plaintiffs conferred no benefit upon the Defendants.  However, arguably, requiring a benefit conferred is improper creation of a new element for state law, a violation of the court's duty to give full effect to state law as each individual state law has seen fit to establish its law.  *West*, 311 U.S. at 236-237.

The Louisiana Supreme Court has set forth five elements for a cause of action based on unjust enrichment: (1) there must be an enrichment; (2) there must be an impoverishment; (3) there must be a connection between the enrichment and resulting impoverishment; (4) there must be an absence of 'justification' or 'cause' for the enrichment and the impoverishment; and (5) there must be no other remedy at law available to the plaintiff. *Baker v. Maclay Properties Co.,* 648 So.2d 888, 897 (La.1995).

Thus, under the plain language of Louisiana authority, benefit to a defendant is not required as an element of an unjust enrichment claim.  Requiring such is creation of an element of state law which does not actually exist under state law.  While the Louisiana Supreme Court has not declared benefit is not an element of the claim, it is improper for the Report to decide that it is, particularly as Louisiana courts have recognized unjust enrichment in cases where there were demonstrably no benefit to the enrichee.  See *Transp. Ins. Co. v. Leavines*, 94-651 (La. App. 5 Cir. 5/10/95), 656 So. 2d 720, 722, writ denied, 95-1468 (La. 9/15/95), 660 So. 2d 455,  *Marceaux v. Town of Lake Arthur*, 392 So. 2d 783, 785 (La. Ct. App. 1980).

The vernacular of Louisiana civil law is substantially different from that of the remaining United States.  It is the only state which utilizes civil code.  Translation into equivalent non-civil-code terms is usually necessary for practitioners outside Louisiana.  Presumably, this is what the Report intended to do by (again, presumably) equating "benefit" with "enrichment."  The conclusion reached, however, violates Louisiana law and not merely because the Report erroneously decided based upon Florida law.

In defining what constitutes an enrichment, Louisiana law has generally applied an economic approach, though economic is not strictly limited to the exchange of monies.  Where the enrichee's patrimony has been increased, either by actual  receipt of funds or being saved the cost of funds that would otherwise need be expended, there has been an enrichment.  "The comments to art. 2298 state that a person is enriched when his patrimony is increased or his liabilities diminish. Likewise, a person is impoverished when his patrimony decreases or his liabilities increase." *Hanger One MLU, Inc. v. Unopened Succession of Rogers*, 43,120 (La. App. 2 Cir. 4/16/08), 981 So. 2d 175, 183.  See also, *Carter v. Flanagan*, 455 So. 2d 689, 692 (La. Ct. App. 1984), *Cabral v. CIB Investments, Inc*., 433 So. 2d 897, 899 (La. Ct. App. 1983).

Thus, under well-established Louisiana state law, all a plaintiff need assert in a complaint to assert the enrichment element is that the defendant has obtained an economic advantage.  This is consistent with the definition of a benefit as set forth in the *Restatement of Restitution*, which defines benefit to include anything which adds to the other's advantage:

> A person confers a benefit upon another if he gives to the other possession or some other interest in money, land, chattels, or choses in action, performs services beneficial to or at the request of the other, satisfies a debt or a duty of the other, or in any way adds to the other's security or advantage. He confers a benefit not only where he adds to the property of another, but also where he saves the other from expense or loss. The word 'benefit,' therefore, denotes any form of advantage. . . .

As was pointed out in the opposition to the motions to dismiss, Louisiana has affirmatively adopted the *Restatement* definition of "benefit" for purposes of restitution.  The court was provided with binding state court authority on this point.  *Harp v. Lake Providence*, 338 So. 2d 169, 171 (La.App. 2 Cir. 1976)(punctuation in original). See also, *United States v. P/B STCO 213*, *ON 527 979*, 756 F.2d 364, 371 (5th Cir. 1985)("An unjust enrichment occurs when . . . one's avoidance and consequent shifting to another of the cost of performing a duty that one is primarily obligated to perform."), *Advanced Logistical Support, Inc. v. Fritz Cos.*, 2003 WL 21459688, *12 (E.D. La. June 18, 2003)("A defendant is enriched where the plaintiff has performed services beneficial to the defendant or satisfied a debt or duty of the defendant.").

The Report simply disregards cited authority on the ground that it does not believe it.  The Report cites no Louisiana authority whatsoever that Louisiana state courts have retreated, altered, amended or otherwise limited the definition of "enrichment" adopted by the Louisiana courts or that failing to make full payment to Plaintiffs does not constitute an addition to Defendants' respective patrimony.  It simply chooses not to follow Louisiana authority, a choice which is strictly prohibited under binding Supreme Court authority.

The Report takes another route, asserting there is no averment of a benefit conferred because the repairs were not requested by the Defendant insurers, stating the complaint does not allege services performed were beneficial to the Defendant insurers or satisfied a duty or debt of Defendants, and failed to allege Defendant insurers have a duty to repair vehicles.

In addition to being inaccurate representations of the contents of the complaint, none of these purported failures of "benefit" have any relation whatsoever to whether or not the Defendant insurers have been economically advantaged.  The Report creates its own definition of "benefit" without reference to Louisiana law of enrichment.  Had such a review and analysis occurred, the Report could not have reached the conclusions made.

The complaint avers the Plaintiffs performed repair services for the insureds and claimants of the named Defendants.  The complaint avers the Defendants are responsible for payment of repair costs.  The complaint avers the Defendants have failed and refused to make full payment for those repairs.  The complaint avers the Plaintiffs have been economically harmed as a result of that refusal.  The complaint avers the Defendants have been enriched by their own malfeasance in refusing to make full payment for all necessary repairs.  The complaint therefore sets out that the Plaintiffs have been impoverished, the Defendants have been unjustly enriched, as required by Louisiana law.

The Court is required to accept the averments of the complaint as true and draw all reasonable inferences in favor of the Plaintiffs.  The authority to disregard asserted facts is delineated by a firm, bright-line rule.  The trial court may not disregard facts asserted in the complaint unless they are of such fantastical quality as to defy reality as we know it, such as claims of time travel or encounters with space aliens. *Iqbal*, 556 U.S. at 696.

It cannot be argued the facts set out in the complaint are remotely of such fantastical quality as to defy the reality.  The Report makes clear that it simply finds them "unpersuasive."  In fact, the

Report specifically states as the reason for disregarding Louisiana authority as, "I am not persuaded."

With great respect, it is not within the court's authorized purview to be persuaded or not. "Rule 12(b)(6) does not countenance dismissals based on a judge's disbelief of a complaint's factual allegations." *Neitzke v. Williams*, 490 U.S. 319, 327, (1989).  See also, *Ashcroft v. Iqbal*, 556 U.S. 662, 696, (2009),  *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 428 (4th Cir. 2015), as amended on reh'g in part (Oct. 29, 2015).

Further, a district court is required to apply the law of the state as that state has declared it. It is not permitted to substitute its own judgment, alter or amend or otherwise redefine state authority. *West*, 311 U.S. at 23-37.  See also, *Neeley v. Wells Fargo Fin., Inc.*, 2012 WL 5949106, at *4 (M.D. Fla. Nov. 28, 2012).

The explicit statements and reasons given in the Report need no translation.  They are unambiguous.  The Report clearly states its findings are predicated upon a refusal to accept the allegations of the complaint as true and to accept the authority handed down by Louisiana courts. This is a direct breach of the court's duty in passing on a motion to dismiss.

Under clear and applicable authority, the Court is required to accept the allegations of the complaint as true unless they are facially delusional.  The allegations of the complaint do not meet this bright line rule by any objective standard.  Under equally clear and applicable authority, the Court is required to apply state law as Louisiana has defined it, not substitute its own judgment or the law of another state because it finds that law preferable as it has done here.

The conclusion that Louisiana Plaintiffs' unjust enrichment claim must be dismissed is therefore predicated upon incorrect legal standards and incorrect state law authority and should not be adopted.

4.   Defendants' request for repair services is not an element of an unjust enrichment claim under Louisiana law

As part and parcel of its "no benefit to Defendants" discussion, the Report finds dismissal appropriate because repair services were requested by consumers, not the Defendants.   It is wholly irrelevant to an unjust enrichment claim whether or not services were directly requested by the Defendants.

A direct request for the services provided is not an element of the unjust enrichment claim under Louisiana law.  Some states do include such an element; it is not a novel or unknown concept. Should a state wish to create a "request" element, they are free to do so.  However, the district court was not free to create it on behalf of Louisiana which has chosen to forgo this additional requirement.

Nor can it be reasonably stated such a requirement is somehow implied in Louisiana law. Louisiana law looks to whether there has been an impoverishment by the plaintiff and an enrichment by the defendant.  Louisiana law has recognized that restitution for unjust enrichment may be imposed not only in spite of a defendant's intentions but in frustration of a defendant's refusal. "Quasi-contractual obligations may be imposed despite, and frequently in frustration of, the intention of the parties, and no promise of repayment need be shown." *Wilson v. DeJean*, 197 So. 2d 134, 138 (La. Ct. App.), writ refused, 250 La. 903, 199 So. 2d 917 (1967).  See also, *Martin v. Bozeman*, 173 So. 2d 382, 386 (La. Ct. App. 1965).  Louisiana further supports unjust enrichment restitution when a defendant has not actively participated in the unjust enrichment but was the unwitting enrichee. *Bossier Par. Sch. Bd. v. Pioneer Credit Recovery, Inc.*, 49,525 (La. App. 2 Cir. 1/14/15), 161 So. 3d 1007.

Louisiana courts have even allowed unjust enrichment claims where the enrichee specifically told the impoverished party they would not be paid prior to commencement of work.  The Louisiana Supreme Court reversed the intermediate appellate court which held to the contrary.  *USA Disaster Recovery, Inc. v. St. Tammany Par. Gov't*, 2013-0656 (La. 5/31/13), 145 So. 3d 235.  Given this, it cannot be said Louisiana would suddenly retreat from its position that an enrichee need not have sought out the services rendered to be liable in restitution for those services.

It is therefore irrelevant under Louisiana law whether or not the Defendants actually requested the repair services for which they are required to make payment.  The Report's creation of a request element  violates not only the express language of Louisiana law but it's intent and purpose, as well.

A claim cannot be dismissed for failing to allege facts in support of a  legal element which does not exist. See, e.g.,  *ISystems v. Spark Networks, Ltd.*, 428 F. App'x 368, 372, FN 4 (5th Cir. 2011)("Contrary to Spark defendants' argument, establishing irreparable injury or inadequacy of remedies at law is not an element of a claim under § 1114(2)(D)(v), and thus ISystems' failure to allege facts sufficient to satisfy the requirements for an injunction is irrelevant.") and *Waters v. Int'l Precious Metals Corp.*, 172 F.R.D. 479, 495-96 (S.D. Fla. 1996).[1]

Dismissal upon this ground is therefore legally insupportable and should not be adopted.

5.      Requiring request for services originate from Defendant insurers violates corollary
        Louisiana law

---

[1]This is, of course, recognized across the judiciary*:  Lange v. The Univ. of Chicago*, No. 15-C-7303, 2015 WL 7293588, at *2 (N.D. Ill. Nov. 19, 2015), *Ward v. TheLadders.com, Inc.*, 3 F. Supp. 3d 151, 169, FN 10 (S.D.N.Y. 2014), *Coleman v. Schwarzenegger*, No. C01-1351-THE, 2008 WL 4813371, at *3 (E.D. Cal. Nov. 3, 2008), *Shaw v. Doherty Employment Grp.*, No. IP00-0139-C-T/G, 2001 WL 290376, at *1 (S.D. Ind. Feb. 7, 2001).

Louisiana statute forbids an insurer from making payment for auto repairs contingent upon use of a insurer-preferred repairer.  La. Stat. Ann. § 22:1892.

Consumers therefore have the choice of repair facility, even over the objections of an insurer and the insurer may not refuse to pay covered repairs.  The Report's finding that an unjust enrichment claim is contingent upon the Appellees requesting repairs instead of consumers directly contravenes Louisiana statute. Neither the insurer's request, consent nor agreement is required before the insurer's obligation to pay for repairs is triggered.

Additionally, the court's ruling destroys the spirit of the intended protection provided to consumers.  The State of Louisiana felt a consumer's choice of repair facility was sufficiently worthy of protection that it enacted a statute to prohibit an insurer from making payment of covered repairs contingent upon the insurer's approval of the repair facility.

The potential for abuse under the Report's finding is obvious–if request for services must originate from the insurer, the insurer may defeat the consumer's choice of body shop simply by remaining silent until the consumer capitulates and moves to a body shop of which the insurer approves.

Such economic coercion of consumers is not an unreasonable possibility.  It is an existing reality as set forth in the complaint.  The Defendants already exert economic coercion upon consumers for their choice of body shops, including the Plaintiffs' shops.

The Report therefore doubly erred–it created a new element for unjust enrichment, and created an element which directly contravenes corollary state authority.

6.    Defendants' duty to repair

Plaintiffs are not quite certain whether the Report intends to convey the proposition that the insurers themselves have no duty to perform repairs or have no obligation to pay for repairs to vehicles in general.  Respectfully, the facts alleged in the complaint negate either interpretation.

As set forth in the complaint, the Defendants are obligated to pay the cost of repairs to the vehicles of their insureds and claimants, not perform the repairs themselves.  Certainly nowhere within the complaint do Plaintiffs allege, even by implication, that any Defendant is required to actually perform the hands-on work of collision repair themselves.  At the present pleading stage, the Court is required to accept these assertions as true.  The authority to disregard asserted facts is delineated by a firm, bright-line rule.  The trial court may not disregard facts asserted in the complaint unless they are of such fantastical quality as to defy reality as we know it, such as claims of time travel or encounters with space aliens.  *Iqbal*, 556 U.S. at 696.

If the Defendants wish to refute the allegations of the complaint, to assert they have no duty to pay the cost of repairs, they may do so by way of an answer and they must bear the burden of proof for this affirmative defense.  Given the allegations of the complaint, the Report makes an unwarranted negative factual conclusion in breach of its duty to analyze the allegations of the complaint in favor of the Plaintiffs.

7.   <u>Discharge of Defendant's duties and obligations to claimants and insureds</u>

The Report further asserts the unjust enrichment claim must be dismissed because the complaint does not allege Plaintiffs' services constitute a discharge of Defendants' duties to claimants and insureds and therefore there has been no benefit to the Defendants.  This is error.

The complaint does allege Plaintiffs' services allowed Defendants to discharge their duties and obligations to claimants and insureds, including, inter alia:

107.   The Plaintiff body shops have done business at various times over the course of years with the Defendants' policyholders and claimants by providing to these policyholders and claimants motor vehicle collision repair services.

108.   Each Defendant is individually responsible for payment for those repairs for their respective policyholders and claimants.

556.   Plaintiffs have performed valuable services and expended material resources with the reasonable expectation of payment\compensation for those services and materials. This is their business. Performing said services and expending material resources benefitted and enriched Defendants and Defendant's insured/claimants for whom Defendants are required to provide payment for repairs.

Therefore the Report's finding that no such allegations exist in the complaint is demonstrably false.

In the overall context of the Report's discussion, however, it appears the Report did not actually mean what it said; it appears the Report finds that though the allegations are present in the complaint, it simply does not find them sufficient to allege a benefit to the Defendants.

As discussed at length above, the Report's definition of "benefit" is wholly unsupported by Louisiana law. Instead, the Report erroneously relies upon Florida law, quoting Florida authority to determine Plaintiffs' services do not constitute a benefit to Defendants.

Application of Florida law is clear error. Louisiana law applies and the Report fails to adhere to Louisiana law. Benefit to a defendant is not an element of the claim. Further, "enrichment" as defined and applied by Louisiana state law specifically encompasses enrichment by way of services permitting a defendant to discharge a separate duty or obligation.  See *supra*, *Harp,* 338 So. 2d at 171, *United States v. P/B STCO 213*, *ON 527 979*, 756 F.2d at 371, *Advanced Logistical Support,* 2003 WL 10808 (E.D. La. June 18, 2003)("A defendant is enriched where the plaintiff has performed services beneficial to the defendant or satisfied a debt or duty of the defendant.").

If the Defendants wish to pursue the theory they have no duty to make payment for repairs, they are free to do so by way of an answer and assertion of affirmative defense for which they bear the burden of proof.  However, Louisiana state law does not support, indirectly or directly, dismissal of the unjust enrichment claim on this ground.

8.    <u>The Report makes demonstrably erroneous conclusion that Plaintiffs failed to allege they have been impoverished by Defendants' actions</u>

The Report concludes the unjust enrichment claim must be dismissed because the complaint fails to adequately allege they have been impoverished by Defendants' actions.  As support for this finding, the Report quotes two sentences of the lengthy complaint then concludes, "Plaintiffs have already attempted to recover these losses by alleging antitrust and tortious interference claims against Defendants.  These unsuccessfully pled claims operate to bar unjust enrichment as an alternative cause of action."

Respectfully, the Report's finding simply makes no sense for several reasons.  First, the sentences used by the Report to justify its finding are neither the most illustrative of the unjust enrichment claims, nor are they by far the only allegations of the complaint which include but are not limited to:

109.    Over the course of several years (as further described below), the Defendants have engaged in an ongoing, concerted and combined intentional course of action and conduct to improperly and illegally control and depress automobile damage repair costs to the detriment of the Plaintiffs and the substantial profit of the Defendants.

166.    This continues to be the public face of direct repair programs.  The reality, however, is starkly contrary.  Instead of ensuring quality repairs, DRPs became vehicles for suppressing repair costs to the detriment of the Plaintiffs and consumers.  Insurers steer or coerce consumers to their DRP shops, again proclaiming their benefits, while knowing many DRP shops across the nation consistently and willfully fail to make safe and proper repairs.

554.    The Plaintiffs have been damaged by the Defendants malicious and intentional actions without privilege and in violation of law. Plaintiffs are therefore entitled to compensation for these damages.

It is therefore demonstrably false for the Report to find the complaint lacking in allegations of impoverishment by the Plaintiffs.

Further, the Report errs as a matter of law in concluding the "unsuccessfully pled" antitrust and tortious interference claims bar the claim for unjust enrichment. The antitrust claims are predicated upon price fixing and boycotting, neither of which share any elements relating to payment of work performed and for which payment is still due. Tortious interference by definition requires that work <u>not</u> have been performed. Again there is no overlap in any element of the claims.

Unjust enrichment does not require a showing of collusion or agreement by Defendants. Tortious interference does not require a showing of unjust enrichment. To suggest that a claim for payment of work already performed is the same as price fixing, boycotting or tortious interference is to create an entire spectrum of elements of both federal and state law elements which simply do not exist.

At the same time, requiring a showing of collusion or agreement or tortious interference into a claim for unjust enrichment completely negates the existence of unjust enrichment as a cause of action under Louisiana law.

The Report relies upon *Walters v. MedSouth Record Mgmt.,* 38 So. 3d 241 (La. 2010) for its conclusion. However, *Walters* makes no such finding. *Walters*, and similar cases, stand for the proposition that where a party has an alternate legal avenue to recover for a particular loss, unjust enrichment may not be substituted therefore. The most common scenarios involves the existence of a contract between the parties, or statutory relief is available, or, as in, *Walters*, a tort. *Dual*

*Drilling Co. v. Mills Equip. Investments, Inc.*, 98 0343 (La. 12/1/98), 721 So. 2d 853, 857 (". . . a delictual action. It is available to an owner dispossessed as a result of an offense or quasi-offense or, in other words, a "tort.")

The Report misinterprets the language of Louisiana law.  It does not hold, as the Report finds, that any other cause of action asserted in a complaint constitutes a legal negation of an unjust enrichment claim.  It holds that if a plaintiff has another legal avenue to recover for a particular loss, unjust enrichment is unavailable for that loss.  But where there is no other such legal avenue, unjust enrichment claims are permitted.  *Edmonton v. A-Second Mortgage Co. of Slidell*, 289 So. 2d 116, 122 (La. 1974).

This has been recognized by the federal courts sitting in Louisiana, along with the narrow holding of *Walters*, specifically.  *Property One, Inc. v. USAgencies, L.L.C.*, 830 F. Supp. 2d 170, 175 (M.D. La. 2011).[2]

In addition to being statutory antitrust claims, not state tort claims, neither a claim of price fixing or boycotting will permit the Plaintiffs to recover unpaid amounts for work already performed and for which payment is owed.  Nor will tortious interference, which by definition requires that Defendants' actions interfered with Plaintiffs' opportunity to perform the work at all and therefore does not permit recovery of sums due and owing for completed work.

As neither antitrust claims nor tortious interference claims provide a remedy for nonpayment of work performed, neither constitutes a legal bar to the claim for unjust enrichment.  The Report's conclusion is without legal support and should not be adopted.

---

[2]As Defendant USAgencies (a subsidiary of Affirmative Insurance) was a defendant in the *Property One* case, it was already aware of this rule of law.

9.      The Report errs in concluding Plaintiffs' expectation of full payment is unreasonable and therefore excludes a claim for unjust enrichment

The Report incorrectly asserts the Plaintiffs have been paid all they are entitled to receive because Defendants' unilateral course of conduct in refusing full payment renders Plaintiffs demand for full payment unreasonable.  The Report erroneously assumes many things which contradict the allegations of the complaint, and the law of Louisiana, the first of which is that partial payment and/or a defendant's refusal to pay in full somehow combine to extinguish an unjust enrichment claim.

A.      "Reasonable expectation" is not an element of unjust enrichment under Louisiana law

Unlike many other states, Louisiana does not include as an element of unjust enrichment a reasonable expectation of payment.  See above, elements of unjust enrichment under Louisiana law.  Instead, Louisiana is concerned only with a plaintiff's impoverishment and a defendant's enrichment.

Diligent research has not discovery any Louisiana authority holding reasonable expectation of payment to be a requirement under Louisiana unjust enrichment law.  In fact, diligent research has not discovery any Louisiana unjust enrichment authority in which the words "reasonable expectation of payment" even appear, much less are designated an element of the claim.[3]

As reasonable expectation is not an element of the claim, its presence or absence within the complaint is irrelevant.  It is not necessary for Plaintiffs to allege "they had any reasonable

_____

[3]There are five cases from federal courts sitting in Louisiana in which "reasonable expectation of payment" is a defined element of unjust enrichment under federal common law. See, e.g., *U.S. ex rel. Roberts v. Aging Care Home Health, Inc.*, 474 F. Supp. 2d 810, 820 (W.D. La. 2007),  *Health Cost Controls v. Fuxan,* 1996 WL 737001, at *2 (E.D. La. Dec. 19, 1996), *McGee v. Humbrecht*, 1991 WL 211517, at *2 (E.D. La. Sept. 26, 1991).  There is no evidence the State of Louisiana has ever adopted the federal common law element formulation, as it continues to cite the five element enrichment/impoverishment formulation as statutorily codified by Louisiana Civil Code.

expectation of additional payment from Defendants."  The court is prohibited from dismissing a claim for failing to allege facts supporting a non-existent element of the claim.  It is further prohibited from replacing Louisiana law and the elements of claims under Louisiana law with preferred outcomes or rules. *West*, 311 U.S. at 236-237, *Watson v. Dugger*, 945 F.2d 367, 369 (11th Cir. 1991).

  The Report's conclusion is therefore contrary to Louisiana law and federal authority.

    B.  <u>Louisiana unjust enrichment affirmatively requires adequate compensation for services rendered which is a question of fact</u>

  Under Louisiana law of unjust enrichment, a defendant's enrichment is unjust when its patrimony has been increased without a corresponding transfer of adequate compensation. *Munro v. Carstensen*, 41,714 (La. App. 2 Cir. 12/20/06), 945 So. 2d 961, 966,  *Gulfstream Servs., Inc. v. Hot Energy Servs., Inc.*, 2004-1223 (La. App. 1 Cir. 3/24/05), 907 So. 2d 96, 101, writ denied, 2005-1064 (La. 6/17/05), 904 So. 2d 706, *Carter v. Flanagan*, 455 So. 2d 689, 692 (La. Ct. App. 1984).

  Louisiana law therefore requires adequate compensation, or as otherwise phrased, fair payment.  *Gulfstream Servs.,* 907 So. 2d at 102.  Under Louisiana law, unless the Defendants made fair payment, they have been unjustly enriched.  Adequate compensation due "is measured by the extent to which one has been enriched or the other has been impoverished, whichever is less."  *Id.*

  The Report does not undertake to discuss whether or not compensation made is either fair or adequate.  It is not possible for the court to determine the compensation paid Plaintiffs is either adequate or fair.  The court has no evidence before it to make that determination, even if it were within the purview of the court to make that factual determination.  No discovery has been had or evidence proffered as to what the Defendants paid, whether it was adequate or fair. It is reversible error for a district court to "collapse discovery, summary judgment[,] and trial into the pleading

stages of a case." *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 434 (4th Cir. 2015), as amended on reh'g in part (Oct. 29, 2015)(citing *Petro-Hunt, L.L.C. v. United States*, 90 Fed. Cl. 51, 71 (2009).

Whether or not the court believes Plaintiffs' expectations of full payment was reasonable or not is irrelevant. Whether or not Plaintiffs were reasonable in demanding full payment for all services performed is irrelevant; Louisiana law looks to whether or not Plaintiffs were fairly compensated for their services. That is not something the court can decide on a motion to dismiss, in the absence of evidence of compensation paid to date. It is substantially unlikely that question will ever be before the court for determination as it should be fully anticipated that Defendants will dispute they have paid anything less than fair and adequate compensation, creating a classic case of material facts in dispute for the jury to decide.

The Report errs as a matter of Louisiana law in finding the Plaintiffs' expectation of payment was not reasonable.

10.   Even if "reasonable expectation" was an element of an unjust enrichment claim, the Report errs by applying an affirmative defense not pled by the Defendants

The Report apparently accepts the Plaintiffs are entitled to payment for their services but concludes the Defendants are permitted to avoid liability on the unpaid balance due to their persistent course of conduct. As the facts asserted in the complaint are directly contrary to this conclusion, the Report perforce decides the issue upon reference to matters outside the four corners of the complaint.

An affirmative defense is any matter that serves to excuse the defendant's conduct or otherwise avoid the plaintiff's claim, but which is proven by facts extrinsic to the plaintiff's complaint. *Boldstar Tech., LLC v. Home Depot, Inc.*, 517 F. Supp. 2d 1283, 1291 (S.D. Fla. 2007).

See also, *Green v. Amjak Enterprises, Inc.,* No. 2:06CV264FTM29SPC, 2006 WL 2265455, at *2 (M.D. Fla. Aug. 8, 2006)

Defendants unquestionably bear the burden of proof for affirmative defenses they may choose to assert. *Meacham v. Knolls Atomic Power Lab.,* 554 U.S. 84, 93 (2008) and *Thorsteinsson v. M/V Drangur*, 891 F.2d 1547, 1550-51 (11th Cir. 1990).

Here, the Report recommends dismissing the complaint based not upon the contents of the complaint, but upon the arguments forwarded in the Defendants' motions that they need not make full payment because they have successfully refused to pay in the past. The Report therefore decided the issue upon an avoidance of liability, an affirmative defense.

Ordinarily, a motion to dismiss may not be decided upon an affirmative defense, specifically because the trial court is required to accept the factual allegations of the complaint as true; a plaintiff is not required to negate an anticipated affirmative defense in a complaint. *Twin City Fire Ins. Co.*, 609 F. App'x 972, 976-77 (11th Cir. 2015). Only if the existence of an affirmative defense plainly and conclusively appears on the face of the complaint may a 12(b)(6) dismissal even be considered. *Id.*

The trial court may not, however, draw inferences or make factual conclusions in order to apply an affirmative defense as grounds for a 12(b)(6) dismissal. *Id.* The Report performs both of these prohibited things.

More than one affirmative defense utilizes course of conduct as an indicator of an avoidance of liability for a claim, most usually waiver and estoppel. That Defendants have acted consistently over time is wholly insufficient for a conclusion that either waiver or estoppel (or some other affirmative defense) plainly appears on the face of the complaint in contravention of the unambiguous allegations of the complaint. It merely shows the Plaintiffs have considerable damages.

Louisiana law has made clear that waiver and estoppel constitute affirmative defenses which must be specially pleaded. *Beslin v. Anadarko Petroleum Corp.*, 2011-1523 (La. App. 3 Cir. 4/4/12), 87 So. 3d 334, 338, *Commercial Credit Corp. v. Gaspard Motors, Inc.*, 147 So. 2d 881, 884 (La. Ct. App. 1962), writ refused, 244 La. 126, 150 So. 2d 587 (1963).

Furthermore, and dispositive of the Report's finding, as an affirmative defense, waiver cannot be raised as a basis for a motion to dismiss. *Beslin*, 87 So. 3d at 338, *Hartman Enterprises, Inc. v. Ascension St. James Airport & Transp. Auth.*, 582 So. 2d 198, 202 (La. Ct. App.), writ denied sub nom. *Hartman Enterprises, Inc. v. Ascension- St. James Airport & Transp. Auth.*, 582 So. 2d 195, FN 2 (La. 1991).

Dismissal based upon application of an affirmative defense is reversible error under Louisiana law. *Osborne v. Stone*, 476 So. 2d 809, 809 (La. 1985). It is also reversible error under federal authority. *Twin City Fire Ins. C o.*, 609 F.App'x at 976-77, *Short v. Immokalee Water & Sewer Dist.,* 2016 WL 749007, at *5 (M.D. Fla. Feb. 25, 2016).

Louisiana law allows two routes to establish waiver, expression of an actual intention to relinquish the right, or  conduct so inconsistent with the intent to enforce the right  as to induce a reasonable belief that the right has been relinquished. *Steptore v. Masco Const. Co.*, 93-2064 (La. 8/18/94), 643 So. 2d 1213, 1216.

Estoppel, like waiver, is an affirmative defense which must be pled in the answer and may not form the basis of dismissal. *Hartman Enterprises*, 582 So. 2d 195, FN 2, *Short*, 2016 WL 749007, at *5. To create an estoppel, a party must have a duty to speak and evidence the defendant changed its position to its detriment in reliance upon the plaintiff's silence. *Duthu v. Allements' Roberson Mach. Works, Inc.*, 393 So. 2d 184, 186 (La. Ct. App. 1980). These defenses rely upon

the conduct of the plaintiff, not the unilateral conduct of the defendant, to determine whether a waiver or estoppel has been created.

Louisiana has even set forth the elements a party claiming estoppel must prove:1) a representation by action or word; 2) justifiable reliance on the representation; 3) a detrimental change in one's position because of the reliance. Estoppel will not lie if any element remains unproven. *Id.*

The complaint repeatedly avers facts contradicting any suggestion the Plaintiffs waived any legal rights. Plaintiffs have repeatedly attempted to collect unpaid amounts for repair services but those efforts were met with threats, economic coercion and boycotting. The district court is required to accept these facts as true, instead of disregarding them to draw the negative inference an avoidance of liability was justified. *Iqbal*, 556 U.S. at 696.

While facts expressly asserted negate application of a waiver affirmative defense, the complete absence of facts relative to estoppel fully negate its application, as well. There is nothing in the complaints from which the court could reasonably conclude the Plaintiffs made any representation which misled the Defendant, that  Defendants changed their position through detrimental reliance upon the conduct of the Plaintiffs and suffered harm as a result. The complaint alleges there has been no change in Defendants' conduct at all; they have continued to refuse to make full payment, backed up with threats, economic coercion and boycotting for failing to quietly submit to Defendants' wrongful conduct.

No affirmative defenses have been pled. There have been no answers filed, no defenses asserted, no discovery conducted, no evidence presented to the court. The Report simply creates an affirmative defense on behalf of the Defendants, deems it worthy without any evidence, excuses the Defendants from their burden of proof and recommends dismissing the claim on the merits.

Plaintiffs submit this constitutes a fundamental error of law which, respectfully, must be not be adopted as it is reversible error for a district court to "collapse discovery, summary judgment[,] and trial into the pleading stages of a case." *SD3, LLC,* 801 F.3d at 434.

11.     Partial payment does not extinguish a claim for unjust enrichment under Louisiana law

The complaint alleges the Defendants have failed to make full payment of the outstanding costs for repairs performed to Defendants' claimants' and insureds' vehicles.  The Report applies avoidance of liability due to Defendants' course of conduct, thereby effectively ratifying Defendants' conduct.

However, Louisiana law does not so hold.  In addition to being inappropriate as such avoidance constitutes an affirmative defense, Louisiana law has repeatedly recognized as cognizable unjust enrichment claims where partial payment has been made or habitual refusal to pay has been Defendant's consistent course of conduct.  *Central Facilities Operating Co. v. Cinemark USA, Inc.,* 36 F. Supp. 3d 700, 705 (M.D. La. 2014)*, O'Keefe v. Breaux Mart Gen. Meyers, Inc.*, 499 So. 2d 598, 602 (La. Ct. App. 1986), writ denied, 503 So. 2d 22 (La. 1987), *Fullerton v. Scarecrow Club, Inc.*, 440 So. 2d 945, 950 (La. Ct. App. 1983).

Of particular note in this instance is the recognition that a consistent refusal to pay over the course of years does not extinguish an unjust enrichment claim in Louisiana.  *Central Facilities Operating Co.*, makes clear that such refusal, even over the course of years, has no impact on a plaintiff's right to seek unjust enrichment relief.  There is, therefore, affirmative authority under Louisiana law which prohibits the conclusion made by the Report.  Adopting the same, in the face of contradictory authority is clear error.

12.     The Report's conclusion that Plaintiffs do not allege failure to pay for repairs is demonstrably erroneous

As part of its rationale for recommending dismissal of the unjust enrichment claim, the Report states, "Plaintiffs do not allege that Defendants have failed to pay for the repairs.  What Plaintiffs are complaining about is that Defendants do not make "full payment" because Plaintiffs' services are worth more than the prices Defendants are willing to pay."  While ostensibly citing to specific paragraphs in the complaint for this statement, the statement is demonstrably false and erroneous.

As set forth in the complaint, Plaintiffs do not allege they are simply not being paid the value of their work, they have specifically alleged a complete failure to pay at all for certain repairs performed, a failure to pay in full for certain repairs performed by arbitrarily reducing labor hours without justification, reclassifying refinish operations as repair operations and arbitrarily reducing payment for paint and materials.

The glib assertion in the Report that Plaintiffs complain only they are not getting what they subjectively feel they are worth is false.  The complaint makes clear Defendants are not paying for the repairs actually rendered.  It is not a subjective valuation of worth to demand payment for feather, block and prime when it is necessary and performed.  It is not a subjective valuation of worth to demand payment for de-nib and finesse when it is necessary and performed.  It is not a subjective valuation of worth to demand payment for any of the more than sixty (60) processes and procedures identified in the complaint's exhibit which the Defendant insurers simply refuse to pay for.

These processes and procedures are performed to effect necessary repairs and Defendants are not paying for them.  The court therefore has no basis whatsoever to find the Plaintiffs simply want more because they're worth more.

However, even if that were the case, it would still not lend itself to dismissal.  Such subjective factors are rarely appropriate for disposal upon summary judgment, after discovery, much

less at the pleading stage.  *Carter v. BRMAP*, 591 So. 2d 1184, 1189 (La. Ct. App. 1991).  See also,

*Slavin v. Curry*, 574 F.2d 1256, 1267 (5th Cir.1978)(modified on other grounds)("Cases in which

the underlying issue is one of motivation, intent, or some other subjective fact are particularly

inappropriate for summary judgment."), *In re Basil St. Partners, LLC*, 477 B.R. 846, 852 (Bankr.

M.D. Fla. 2012).

Equally inappropriate for summary disposal are instances where the credibility of witnesses

is at issue.  *J.G. v. Carnival Corp.*, 2013 WL 795145, at *3 (S.D. Fla. Mar. 4, 2013).  As Defendants

will no doubt argue they have made fair and adequate payment while Plaintiffs assert otherwise,

there is obviously a conflict of material facts which will require witness testimony and evidence and

therefore a credibility determination by the finder of fact.

Even if Plaintiffs were only asserting they have not been paid the value of their work, which

they are not, it would make no difference.  Under Louisiana law, Plaintiffs are entitled to adequate

compensation, fair compensation, for their work.  This necessarily requires a determination of the

value of their work and a comparison to what has been paid.

The Report's conclusions on this matter are both a demonstrably inaccurate recitation of the

contents of the complaint as well as violative of binding authority.


13.     <u>Plaintiffs are not required to contract with Defendants prior to making repairs in order
        to be entitled to restitution</u>

The Report concludes Plaintiffs could have entered contracts with the Defendant insurers

prior to commencing repairs and they are therefore prohibited from pursuing an unjust enrichment

claim.  This is erroneous for two reasons.

An express contract is not an element of an unjust enrichment claim under Louisiana law. It is simply not required. In fact, the existence of a contract would negate the claim in its entirety. By adopting the position Plaintiffs could have entered separate contracts with the Defendants but did not and therefore the claim must be dismissed, the Report creates an element of state law which does not exist and purports to dismiss it for failing to abide by the non-existent element. This violates well-established authority that the district court must apply the law of the state as that state has determined it, not as the district court prefers. *West*, 311 U.S. at 236-237, *Watson v. Dugger*, 945 F.2d 367, 369 (11th Cir. 1991).

Additionally, the Report highlights what has continued to be a willful misunderstanding of the repair triangle. Consumers enter agreements with the Plaintiffs for the repair of vehicles. The Defendant insurers enter agreements with their respective insureds to pay for repairs, either for repairs to the insureds' vehicles or the vehicles of third parties due to liability of the insured for damages. Louisiana law imposes the obligation to pay for such repairs regardless of which body shop is selected by the consumer. This obligation to pay is not contingent upon the insurer entering a contract with the repair shop–it exists independent of any agreement or lack thereof between any Defendants and any Plaintiff and may not be waived.

To put it plainly, the consumer has the choice of repair shop. The insurer Defendants have a non-discretionary duty to pay for repairs. As the Defendants have no discretion in either selection of repairer or obligation to pay for repairs, a contract between the repairer and the insurer is completely unnecessary and would require the Plaintiffs to compromise their obligations to their respective customers.

As the complaint sets out in detail, the Defendant insurers' actions extend beyond merely refusing to pay Plaintiffs what "they think they deserve," as the Report finds. The Defendant

insurers consistently refuse to pay for necessary repairs. If a repair procedure is necessary, no amount of negotiation is going to make it less necessary and contracting with an insurer for anything less than full, complete and safe repairs requires the Plaintiffs to breach their obligations to their customers.

If there exists some Louisiana authority requiring the Plaintiffs to breach their obligations to consumers in order to contract away necessary repairs so as to avoid payment disputes for the work performed, Plaintiffs request this authority be identified. The Report cites no such authority. Instead, the Report cites to the *Restatement of Restitution, § 2* for the proposition that "Because contract is strongly preferred over restitution . . . restitution is not usually available to a claimant who has neglected a suitable opportunity to make a contract beforehand."

Unlike those identified by the Plaintiffs in their pleadings, this portion of the *Restatement* has <u>never</u> been adopted by Louisiana courts to limit or define the scope of unjust enrichment. The entire body of Louisiana unjust enrichment authority negates its application by operation of the elements of the claim. It does not require all possible alternatives be explored before unjust enrichment will lie.

It may very well be true contracts are preferred as a general proposition, but in the absence of any authority from the State of Louisiana finding unjust enrichment is unavailable to a plaintiff who theoretically could have contracted in advance but did not, the Report's conclusion violates Louisiana law and breaches its nondiscretionary duty to apply state law as each state has established it.

14. <u>The Report's conclusion that unjust enrichment is unavailable to better the bargain Plaintiffs made is demonstrably erroneous</u>

As the final note, the Report concludes Plaintiffs' claim for unjust enrichment must be dismissed because the claim "is not available to secure a better bargain for Plaintiffs than the amounts they agreed to when they accepted the work."

Nowhere within the complaint does there appear any statement or inference that Plaintiffs voluntarily agreed to accept any particular amount less than their full bill at any point in time.  To the contrary, the complaint is replete with allegations that, despite efforts to obtain full payment, the Defendants have failed and refused to make necessary payment for all services rendered, that such efforts are met with threats, economic coercion, punishment and similar efforts that harm Plaintiffs, both economically and in their business reputations.  Plaintiffs respectfully submit that no reasonable standard can equate duress and coercion with voluntary agreement.  The Report's finding to the contrary is simply fabricated.

In fact, the law of Louisiana precludes such a finding.  Fear or threat of economic deprivation vitiates any perceived consent to terms.  *Wolf v. Louisiana State Racing Comm'n*, 545 So. 2d 976, 981 (La. 1989).  "Article 1959 of the Louisiana Civil Code stipulates that "[c]onsent is vitiated when it has been obtained by duress of such a nature as to cause fear of unjust and considerable injury to a person's property, person, or reputation." The personal circumstances of a party must be taken into account when evaluating the reasonableness of that party's fear."  *Sumrall v. Ricoh USA, Inc.*, 2015 WL 4644328, at *7 (M.D. La. Aug. 4, 2015).

Thus, even if consent or agreement could reasonably be inferred, which it cannot, the complaint further (and repeatedly) asserts Defendants' payments are made under threat, duress and coercion of Plaintiffs constituting actual and threatened economic deprivation.  None of these allegations rise to level of facially delusional facts such that the court is free to disregard or

disbelieve them.  The district court is required to accept these facts as true, instead of disregarding them to draw the negative inference an avoidance of liability was justified.  *Iqbal*, 556 U.S. at 696.

Under Louisiana law, the court may not dismiss the claim on this ground as such dismissal directly breaches the law of Louisiana and the court's nondiscretionary duty to accept the allegations of the complaint as true and draw all inferences favorable to the Plaintiffs.

### TORTIOUS INTERFERENCE

The Report recommends dismissal of the tortious interference claim on the grounds of shotgun pleading, improper group pleading, "material variations" in the manner of interference and a variety of objections which do not lend themselves to reasonable labeling but are discussed below.

15.  <u>Elements of Tortious Interference with Business Prospects under Louisiana law</u>

Louisiana law recognizes the tort of interference with business prospects.  It requires a showing that defendant improperly and maliciously influenced others not to deal with the plaintiff. *Henderson v. Bailey Bark Materials*, 47,946 (La. App. 2 Cir. 4/10/13), 116 So. 3d 30, 37.

16.  <u>The Report applies the incorrect pleading standard under the Federal Rules of Civil Procedure</u>

The Report recommends dismissing all but specified interference claims on the grounds that Plaintiffs have failed to identify the events of interference with sufficient specificity.  Unlike other recent Reports, this one does not explicitly rely upon Rule 9 pleading standards but does so implicitly.

The Report finds, "at a minimum Plaintiffs specific to each Defendant, or at least each corporate family, to tie that Defendant to the wrongdoing alleged, " that the complaint "fails to inform the Defendants or the Court of the specific claims against the Defendants."

This is an incorrect statement.  The claim against the Defendants is tortious interference with business prospects.  What the Report finds lacking are every specific <u>fact</u> underlying this claim.

Respectfully, again, the Plaintiffs are not required to plead with this degree of specificity. As Plaintiffs have repeatedly pointed out, the pleading standard Rule 8 announces does not require "detailed factual allegations."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).   The Supreme Court has expressly rejected the specificity pleading this court is attempting to compel  "<u>Specific facts are not necessary; the statement need only " 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests</u>." *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007)(emphasis added).

The Report fails to cite any authority which overrules, limits or amends the Supreme Court's unambiguous rulings on Rule 8 pleading sufficiency.  By dismissing the claim based in significant part on the Plaintiffs' purported failure to allege the "the specifics" of Defendants' tortious interference, the Report plainly applies the Rule 9(b) standard to Plaintiffs' non-Rule 9(b) claim, which constitutes plain error.  This is apparent in the failure of the Report to cite any authority which requires pleading "the specifics" of this (or any other) claim subject to Rule 8 of the Federal Rules of Civil Procedure.

Further, the Report's findings are not only inconsistent with actual pleading standards, they inaccurately characterize the contents of the complaint.  The complaint admittedly does not assert facts with the specificity of, "On January 12, 2010, at 4:14 p.m., John Smith told State Farm Representative Harry Adjuster he was taking his car to be fixed at ABC Body Shop and Adjuster told Mr. Smith at 4:16 p.m. that he was not allowed to take his car to ABC because ABC performed shoddy work.  This statement was made by telephone."

As the tortious interference claim does not fall under the pleading requirements of Rule 9(b), the Plaintiffs are absolutely and unequivocally <u>not</u> required to plead with that degree of specificity. See *Id.*  However, the complaint does provide factual allegations of the who, what, where, when and how of the Defendants' tortious interference.

| | |
|---|---|
| The complaint sets out the who: | Representatives of the Defendants, and consumers who identified a Plaintiff as their choice of repair shop |
| The complaint sets out the what and the how: | After being notified a consumer had chosen to do business with a Plaintiff, representatives of the Defendants conveyed false, slanderous, and misleading statements of fact to consumers about the quality, ethics and cost of Plaintiffs' services, misrepresented the extent of their respective payment obligations, their authority to compel use of cost-compliant shops upon consumers and exerted various forms of economic coercion upon consumers who articulated the decision to do business with Plaintiffs. The complaint further set out detailed examples of the false, slanderous and misleading statements, explained how they are false, misleading and slanderous, and provided detailed examples of statements exerting economic coercion upon consumers. |
| The complaint sets out the where and the when: | The Defendants' intentional interference commenced upon being notified by a consumer of the selection of a Plaintiff to perform auto repairs, which most often takes place by telephone |

Furthermore, the complaint did provide specific examples of steering which identified the consumer, the specific insurer, the specific statements or actions taken by the insurer to interfere with the consumer's decision of repair shop.

Having previously and repeatedly acknowledged they are not required to meet the specificity pleading of Rule 9, the Report continues to rely upon the purported absence of Rule 9 specific detail to dismiss the claim.  Furthermore, in pleadings in companion cases, the plaintiffs did specifically

name each and every defendant in connection with each and every factual allegation and was chastised by the court and threatened with sanctions.  This places the Plaintiffs in an intolerable and incurable position, with no way to plead.

The Plaintiffs are permitted to aver factual allegations based upon their personal knowledge and belief.  The court is not free to disregard those facts, nor may it dismiss this claim because it chooses not to believe those facts.  "Rule 12(b)(6) does not countenance dismissals based on a judge's disbelief of a complaint's factual allegations." *Neitzke v. Williams*, 490 U.S. 319, 327, (1989). See also, *Ashcroft v. Iqbal*, 556 U.S. 662, 696, (2009),  *SD3, LLC v. Black & Decker (U.S.) Inc*., 801 F.3d 412, 428 (4th Cir. 2015), as amended on reh'g in part (Oct. 29, 2015).

The Report further fails to apprehend the significance of the failed attempts to interfere and fails to utilize the information properly.  The reality is the Plaintiffs can only know of the Defendants' interference when a customer reports it to them or is witnessed by a Plaintiff, which occurs <u>very</u> rarely.  Only the Defendants have full, specific knowledge of the extent and success of their interference.  As that information is solely within the possession of the Defendants, the Court may not dismiss the claim for failing to provide specific facts.  Not even complaints subject to the particularity pleading of Rule 9 may be dismissed on this ground under these circumstances.

Plaintiffs must accompany their allegations with facts indicating why the charges against defendants are not baseless and why additional information lies exclusively within defendants' control.  *Id.* at 646**.**  *Hekker v. Ideon Grp., Inc*., 1996 WL 578335, at *4 (M.D. Fla. Aug. 19, 1996).

That is precisely what Plaintiffs have done.  The failed attempts to interfere are specific examples of which the Plaintiffs have been made aware; they support the allegation that Defendants are engaging in the actions described in the complaint; they show the charges against the Defendants are not baseless.  Or, in the language of the Supreme Court, they provide factual content allowing

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678.  See also, *Anderson v. Ward*, 373 F. App'x 968, 969 (11th Cir. 2010).

While they will not accrue damages for the Plaintiffs, the failed attempts to interfere are just as important as the successful ones, the only difference between the two at the pleading stage is that Plaintiffs more often know the specifics of the failed attempts than they do the successful ones.  The specifics of the successful ones are held within the possession and control of the Defendants.

Although required to do so, the Report fails, if not outright refuses, to draw anything but inferences unfavorable to the Plaintiffs in derogation of its nondiscretionary duty.  The complaint provided multiple examples of interference, successful and unsuccessful.  Rather than draw the reasonable inference that Defendants are indeed acting in the manner described in the complaint, the Report picks apart individual examples and decides they are insufficient to state a claim for tortious interference. The stated grounds for doing so?  "Because Louisiana law requires that the defendant succeed before the conduct is actionable, incidents of unsuccessful steering fail to state a claim." While this may be true generally, accrual of damages is not the only permissible purpose–it is not merely permissible, but encouraged for a plaintiff to provide additional facts for the purpose of supporting the general allegations of the complaint.

Thus**,** the Plaintiffs are permitted to make averments based not on specifically articulated instances of successful interference, but upon information and belief and their personal knowledge:

> [T]he *Twombly* plausibility standard does not prevent a party from pleading facts based "upon information and belief" where the belief stems from factual information that makes the inference of culpability plausible. See *Iqbal,* 556 U.S. at 678 _ ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") The *Twombly* Court stated that "[a]sking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal[ity]." 550 U.S. at 556.  Pleading facts based upon information and

belief when those facts are "peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible" is therefore permissible.

*Universal City Studios v. Nissim Corp.*, No. 14-81344-CIV-KAM, 2015 WL 1124704, at *3 (S.D.

Fla. Mar. 12, 2015).

Further, as was repeatedly noted in other pleadings, the examples set out in the complaint are

exactly that–examples.  As the Supreme Court has repeatedly stated and the Eleventh Circuit has

acknowledged, plaintiffs are not required to plead specific facts to make out a plausible cause of

action under Rule 8.  The Plaintiffs here are therefore not required to set out each and every instance

of interference, successful or unsuccessful, of which they have knowledge.   Providing that

information is exactly what discovery is for.

Further examples of Defendants' conduct, in addition those previously set forth in the

complaint include, but are not limited to:

• USAgencies Defendant representative Bobby Turner telling customers who identify Plaintiff Advantage Collision they need to go to another body shop in another town more than fifteen miles away because Advantage has the highest rates, that African-Americans shouldn't be patronizing a shop owned by a "no good white mother f ***er " but need to "a brother's" shop;

• Progressive sending letters to customers who have identified Plaintiff Advantage as the chosen repair shop, "warning" the customer their shop (Advantage) charges for unnecessary things such as Estimate Conversion Fees (which Advantage cannot even define and has certainly never charged any customer), Manual Moving Charge (which Advantage cannot define, either, and has never charged any customer) and charging "extra" tow fees (which Advantage has never done);

• Progressive directing tow trucks not to take vehicles to Plaintiff Advantage even after customer direction to do so;

• Farm Bureau representative Gordon Davis telling a consumer who identified Plaintiff Parker Auto Body as the selected repair shop that Parker was not on "our list" and she could not take her car to Parker for repairs;

- Farm Bureau representative Gordon Davis harassing customers of Plaintiff Parker's, even after repairs have commenced, falsely stating that Parker was taking too long to finish repairs, and has failed to provide necessary documents when Parker has already done so and has proof of that submission;

- Farm Bureau representative "Mickey" telling a customer who identified Plaintiff Parker Auto Body as the selected repair shop that he could go to any repair shop except Parker;

- State Farm telling a customer who identified Plaintiff Parker Auto Body as the selected repair shop that she was required to take her vehicle to an "approved" shop for an estimate before she was permitted to go to Parker; that if she went to Parker, the repairs would take longer and Parker was not on "the list;"

- Farmer's representative telling Parker Auto Body it's "perfectly legal" to steer customers away from Parker;

- Shelter Defendants' representative Yvonne Whitley harassing customers of Plaintiff Parker's, even after repairs have commenced, by among other things, refusing to acknowledge communication from Parker, falsely telling consumers Parker has failed to submit required documentation when Parker has already done so and has proof of that submission;

- USAgencies representatives, including but not limited to Chantel Watkins and Pat Rogers, telling customers who have identified Plaintiff Parker as the chosen repair shop they cannot go to Parker because USAgencies "doesn't do business with them;"

- USAgencies representative Chantel Watkins telling a customer who identified Plaintiff Parker Auto Body as the chosen repair facility she should go to a different shop because "we can't work with [Parker];"

- State Farm telling a customer who identified Plaintiff Parker as the chosen repair shop that she could not go there unless she signed a waiver of liability, that Parker is not on their program, that State Farm made it sound as if State Farm "fired" Parker from its program due to repair quality issues;

- Travelers representative telling Parker Auto Body a third-party claimant customer that she would need to make a claim on her own insurance for repairs Travelers would not pay for if the customer stayed at Parker because Parker charged too much, Parker was uncooperative and Travelers wouldn't pay their "unreasonable labor rates."

- Safeway representative Ken Irving telling a customer who stated she was going to take her car to either Parker or Bradshaw's (both Plaintiffs), "don't take it to Parker, they won't follow the process;" that an employee of Plaintiff Bradshaw's had had a nervous breakdown and implied Bradshaw's was unreliable.

- Direct General representative telling a customer who identified Parker Auto Body as the chosen repair shop that Parker was crazy and unreasonable;

- Defendant Progressive sending letters to customers of Plaintiff Brouillette's that because the chosen shop (Brouillette's) won't negotiate with them or reduce its estimates, the consumer (including third-party claimants) will have to pay the difference out of pocket but if they don't like that, Progressive will be happy to offer "alternatives."

- Defendant State Farm intentionally delaying inspections of customer's vehicle when customer refused to go to a "preferred" shop instead of Plaintiff Brouillette's and repeatedly harassing the customer to move elsewhere;

- Defendant Allstate repeatedly harassing a customer who took her vehicle to Plaintiff Brouillette's, telling her she needed to go to a shop that would accept what Allstate was willing to pay. Allstate harassed this customer so vigorously, she filed a complaint with the Department of Insurance;

- Defendant Allstate telling a customer of Brouillette's she need to have her disassembled vehicle towed to another shop because Brouillette's wouldn't agree to Allstate's price; when the customer refused, Allstate refused to work the claim for two months and only responded after the Louisiana Attorney general's office became involved;

- Defendant Progressive refusing to address claims of customers of Plaintiff Brouillette's while suggesting they move their vehicles to shops that will work faster, implying Brouillette's was too slow when in reality Progressive simply ignores contact from Brouillette's, Progressive repeatedly contacting the customer trying to convince her to move her vehicle, going so far as to tell a third-party claimant to make a claim on her own insurance and if she moved her car, Progressive would pay her deductible for her;

- Defendant Safeco delaying handling of claim for thirty seven (37) days when customer insisted Plaintiff Brouillette's handle repairs;

- Defendant Farm Bureau telling Plaintiff Brouillette that unless Brouillette's complies with its requirements, Farm Bureau will stop paying for repairs it has always paid for, that Farm Bureau will only pay whatever if feels like paying on every estimate and Farm Bureau will start towing vehicles out of Brouillette's for estimates at preferred shops;

- Defendant Progressive sending letters to customers who have identified Plaintiff Brouillette's as the chosen repair shop, "warning" the customer their shop (Brouillette's) charges for unnecessary things such as Estimate Conversion Fees (which Brouillette's cannot even define and has certainly never charged any customer), and Manual Moving Charge (which Brouillette's cannot define, either, and has also never charged any customer);

- Defendant Hartford telling a customer of Plaintiff Bradshaw's that because Bradshaw would not take their capped payment, Hartford would not authorize a rental vehicle for the customer;

- Defendant Safeco's representative directly admitting that Safeco intentionally steers customers away from Plaintiff Bradshaw's "all the time;"

- Defendant State Farm telling a client it would take her vehicle to a preferred shop instead of Plaintiff Bradshaws, would send a tow truck and "get her out of" the repair contract the customer had already signed with Bradshaw's;

- State Farm refused to inspect the vehicle of a Bradshaw's customers. When the customer called to ask why State Farm left his truck sitting at Bradshaw's for a week without seeing it, State Farm told him Bradshaw's wasn't on the preferred list, that if the vehicle stayed at Bradshaw's it would be at least another five days before an adjuster could view the vehicle and he needs to "go on down the road" to a preferred shop so State Farm, which he did;

- State Farm telling a customer who identified Plaintiff Bradshaw's as the chosen repair shop that Bradshaw's was not one of their preferred shops and she had to take her vehicle to B&S Collision instead. The customer did as State Farm told her she had to and had poor repairs performed; not long after, paint began peeling off the repaired sections of vehicle. Before she could have this addressed, the customer experienced another collision. The customer again told State Farm she wanted repairs performed at Bradshaw's and State Farm again told her to go to a preferred shop, that if she went to Bradshaw's it would be many days before an adjuster would be sent to inspect the vehicle, Bradshaw's was uncooperative, that State Farm wouldn't warrant Bradshaw's work and she would have to pay any amount State Farm chose not to pay. The customer had to argue with State Farm before State Farm admitted she could go to her preferred repairer;

- State Farm telling a customer who selected Plaintiff Auto Body Specialist that Auto Body was no longer on their list, probably failed to meet the "qualifications" any more and giving him a list of preferred shops he could go to instead;

- State Farm threatening a customer who chose Plaintiff Parker to perform repairs that if he stayed at Parker's, it would take State Farm a long time to get to inspect the car and he should go to a preferred shop instead;

- Safeway told a customer who identified Plaintiff Parker Auto Body as her chosen repair shop that if she stayed at Parker, they would charge her too much, that Parker was difficult and wouldn't agree with their appraiser, and she would have to pay extra by having Parker perform repairs. The customer stated Safeway pressured her repeatedly to move her vehicle but she resisted because she had prior repairs performed at Parker and was very happy with the quality of their work;

- State Farm telling a customer who identified Plaintiff Bobby's Paint & Body as the chosen repair shop that Bobby's wasn't a preferred shop, that repairs would take too long if he used Bobby's, that State Farm would only warrant the work done if he moved to a preferred shop. The customer reported the conversation made him feel pressured and coerced into moving to a State-Farm approved shop;

- Progressive sending letters to customers who have identified Plaintiff Medine's as the chosen repair shop, "warning" the customer their shop (Medine's) charges for unnecessary things such as Estimate Conversion Fees (which Medine's cannot even define and has certainly never charged any customer), Manual Moving Charge (which Medine's cannot define, either, and has never charged any customer) and charging "extra" tow fees (which Medine's has never done);

- Defendant GEICO told a customer who identified Plaintiff Bobby's Paint & Body as the chosen repair shop that she could not take her vehicle to Bobby's. When she persisted, GEICO punished her by refusing to pay for necessary repairs that ordinarily are paid for without argument;

- Defendant Horace Mann told a customer who identified Plaintiff Bobby's Paint & Body as the chosen repair shop that Bobby's overcharges and she would have to be responsible for any overcharges of Bobby's though she was not required to pay more than her deductible;

- Defendant State Farm told a customer who identified Plaintiff Bobby's Paint & Body as the chosen repair shop not to take her car to Bobby's, that Bobby's work wouldn't be guaranteed and she would be responsible for any charges above what State Farm chose to pay.

This does not constitute the known universe of tortious interference by Defendants, whether successful or unsuccessful. As fully discussed, Plaintiffs are not required to set out the specific facts of each and every interference, merely provide sufficient facts to place the Defendants on notice of the claims against them and the basis for those claims.

The complaint sets out facts showing both successful instances of interference, sets out examples of unsuccessful attempts, both of which include details of the manner in which that interference was conducted. The successful attempts mirror the unsuccessful ones, the only difference being the fortitude of the consumer in refusing to bow to the pressure of the insurer exerting the interference. Plaintiff has provided more than sufficient facts and inferences to put meat

on the tortious interference bone.  The Report's conclusion to the contrary is a breach of the

applicable pleading standard.

This is particularly apparent when compared to other instances of tortious interference

allegations.  In similar claims against insurers, the arguments are always identical to those made in

the present litigation:

> Defendants complain that plaintiffs have failed to identify specific repair shops,
> employees or agents of defendants, individuals with whom defendants interfered, or
> any specific communication that caused the tortious interference. An existing or
> "reasonable prospect" of such contractual or business relationships with customers
> or prospective customers is required for the business relationship requirement of a
> tortious interference with business expectancy claim.

*A & R Body Specialty v. Progressive Cas. Ins. Co.*, No. 3:07-CV-0929 WWE, 2013 WL 718622, at

*5 (D. Conn. Feb. 27, 2013).

Just as consistently, these arguments are nullified by the court:

> In this instance, plaintiffs have adequately stated that they had relationships with
> third parties, insureds and claimants who used their services and those customers
> who were unlawfully steered away. Plaintiffs have alleged that defendants knew of
> these relationships because defendants paid the claims for such repairs. The Court
> finds that these allegations satisfy the first two requirements of plaintiffs' tortious
> interference claim.

*Id.* at *6.  A copy of the complaint in *A & R Body Specialty v. Progressive Cas. Ins. Co.*, No. 3:07-

CV-0929, District of Connecticut, is attached hereto as Exhibit "1."

The Middle District of Tennessee found the following more than sufficient pleading under

Rule 8 to withstand a motion to dismiss:

> Here, Price's Collision alleges that Progressive steered clients away from its shop by
> actively discouraging its insureds from having repairs done at Price's Collision, by
> publicly and privately discrediting Price's Collision, and/or by refusing to pay the full
> amount for required and proper repairs. Whether Price's Collision can prove these
> contentions remains to be seen, but, for now, the Court accepts the allegations as true

and finds them sufficient to state the element that Progressive interfered with a present or prospective business relationship.

*Price's Collision Ctr., LLC v. Progressive Hawaii Ins. Corp.*, No. 3:12-00873, 2013 WL 5782926, at *5 (M.D. Tenn. Oct. 28, 2013).   A copy of the complaint filed in *Price's Collision Ctr., LLC v. Progressive Hawaii Ins. Corp.* is attached hereto as Exhibit "2."

The court denied dismissal on Defendant Progressive's arguments, identical to those made in the current litigation:

> Substantively, Progressive argues that Price's Collision has identified only three customers in the Complaints, customers who all had their vehicles repaired at Price's Collision, making it "disingenuous to claim that Progressive interfered with these business relationships." (Case No. 3:12-00874, Docket No. 17 at 6). Even so, Price's Collision's allegations are not limited to the identified insureds, but include potential customers, and the cause of action encompasses interference with prospective business relationships.

 5782926, at *5 (M.D. Tenn. Oct. 28, 2013).

As with the Louisiana Plaintiffs' complaint, the plaintiff in *M.V.B. Collision Inc. v. Allstate Insurance Company* asserted a claim for tortious interference with business prospects and supported its claim by providing examples of that conduct and asserting, upon information and belief, that Allstate had engaged in "numerous other instances of steering which has interfered with Mid Island's business with its customers."  See copy of complaint, *M.V.B. Collision, Inc., v. Allstate Insurance Company*, Cause No. 2:07-cv-187, Eastern District of New York, attached hereto as Exhibit "3."

In Alabama, *Kirby's Spectrum Collision, Inc. v. Government Employees Insurance Company*, the Plaintiff's allegations of tortious interference were permitted to go forward:

> [After a meeting regarding the continuing dispute over GEICO's failure to make full payment on paint and materials] the Defendant, Darrell Dispain, threatened the Plaintiff in the presence of witnesses with the loss of all Geico [sic] insured work

and represented that the Plaintiff would receive no more Geico [sic] insured work at its shop.

Subsequent to the aforesaid threat and representation, the Defendant, Geico [sic], by and through its agents, servants and/or employees, has systematically and continuously directed customers and potential customers of the Plaintiff from the Plaintiff's shop and/or arranged for the movement of damaged vehicles for which the Plaintiff had a contract of repair in place by disseminating deceptive, misleading, derogatory and/or false information about the Plaintiff and its business.

. . .

Following the threats and representations made by the Defendant, Darrell Dispain, arising from the dispute between the parties over the arbitrary paint and material caps, the Defendant, Geico, by and through it agents, servants and/or employees disseminated deceptive, misleading, derogatory and/or false statements regarding the Plaintiff and its business including, but not limited to, disparaging the qaulity of its work or availability of warrantee [sic] upon its work, questioning the legitimacy of the amounts charged for its repair services suggesting that its billing was inflated and/or "puffed up" and representing that the Defendant, Geico [sic] would not or may not pay for all and/or part of the repair work if performed at the Plaintiff's shop.

A copy of the *Kirby's Spectrum Collision, Inc. v. Government Employees Insurance Company,* Cause No. 1:09-cv-663, Southern District of Alabama, is attached hereto as Exhibit "4."

All of the arguments the Defendants make in the present case are identical to those made in multiple other cases by multiple different Defendants in multiple other federal jurisdictions. All of them are subject to Rule 8 pleading standards and all of the pleading challenges have been denied by those federal courts.

It is only in the Middle District of Florida that such arguments have found fertile ground, though all federal courts are subject to the same pleading requirements. The Louisiana Plaintiffs (and all others in this MDL) provide far greater detail of the type, nature and content of the interference, provided far more specific examples (most complaints provide no specific examples at all), and generally provide substantially greater specificity than other complaints for similar actions by auto insurers.

Despite being contrary to every other jurisdiction which has had tortious interference claims asserted by body shops, the Middle District of Florida finds validity to arguments rejected by multiple other district courts. The Report cites no authority for its singular approach to Rule 8. Indeed, the Middle District of Florida has previously recognized that specificity is <u>not</u> required to be pled pursuant to Rule 8's notice pleading standard:

> PNG's pleading objections are mostly without merit. Although conclusory allegations are ignored for purposes of evaluating the sufficiency of a plaintiff's claims, such allegations do not condemn the entire pleading. Here, Plaintiffs allege that the survey was "illegitimate" and "false." Plaintiffs also allege that the survey solicited opinions about ACG from dealers who never had dealt with ACG coins and ignored the positive comments of those who had. The gist of the allegation is that PNG concocted the results of the survey to damage smaller grading companies. Accordingly, PNG is on notice of the substance of Plaintiffs' claims, and the basic notice requirement of Rule 8(a) is satisfied.

*National Numismatic Certification, LLC. v. eBay, Inc.*, 2008 WL 2704404, at *16 (M.D. Fla. July 8, 2008)(internal record citations omitted).   See also, *Arbitron Inc. v. Renda Broad. Corp.,* No. 3:13 CV 716 J 34JRK, 2014 WL 1268587, at *3 (M.D. Fla. Mar. 27, 2014, ) and *Punta Gorda-Charlotte Harbor Dev., LLC v. Allstate Ins. Co.,*, 2009 WL 3418260, at *2 (M.D. Fla. Oct. 20, 2009).

The court's ordinary approach to Rule 8 pleading sufficiency is consistent with federal appellate and district courts around the country, not merely those considering tortious interference claims:

> KeyBank defends the district court's reasoning by stating that the complaint "contains not one specific assertion or instance of preferential treatment by KeyBank employees toward non-minority or male customers." **Yet both *Twombly* and *Erickson* explicitly disavow that Rule 8(a) requires any plaintiff—let alone a pro se plaintiff—to plead "specific facts."** *Twombly*, 127 S.Ct. at 1973–74; *Erickson,* 127 S.Ct. at 2200. Moreover, as Boykin correctly observes, the names and records, if any, of persons who were not members of the protected classes and were more

favorably treated in the loan application process is information particularly within KeyBank's knowledge and control. Pleading on the basis of information and belief is generally appropriate under such circumstances. See 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1224 (3d ed. 2004) ("Pleading on information and belief is a desirable and essential expedient when matters that are necessary to complete the statement of a claim are not within the knowledge of the plaintiff...."). Indeed, even in the context of Federal Rule of Civil Procedure 9's more stringent pleading requirements for pleading "special matters," we have held that "allegations may be based on information and belief when facts are peculiarly within the opposing party's knowledge." *IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1057 (2d Cir.1993) (internal quotation marks omitted).

*Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir. 2008)(emphasis added).  See also, *Rodriguez-Reyes v. Molina-Rodriguez,* 711 F.3d 49, 54 (1st Cir. 2013),  *Arista Records, LLC v. Doe 3,* 604 F.3d 110, 120 (2d Cir. 2010),  *McFarland v. McFarland,* 684 F. Supp. 2d 1073, 1088 (N.D. Iowa 2010)(specific facts not required to meet Rule 8 notice pleading requirements*), Ries v. Winona Cty.,* 2010 WL 3515722, at *8 (D. Minn. July 28, 2010), report and recommendation adopted, No. CIV 10 1715 JNE/JJK, 2010 WL 3515716 (D. Minn. Aug. 31, 2010),  *E.E.O.C. v. Propak Logistics, Inc.*, 2010 WL 3081339, at *5 (W.D.N.C. Aug. 6, 2010)(specific facts not required to meet Rule 8 notice pleading requirements).

It is thus established across the federal judiciary, including this very court, that a plaintiff <u>is not required to plead specific facts</u> to adequately plead under Rule 8 of the Federal Rules of Civil Procedure.  Again, the Report cites no authority whatsoever allowing it to compel and mandate the pleading of specific facts, in direct opposition of every accepted authority to the contrary, including its own.

It is clear the Report utilizes a heightened pleading standard, unsupported by binding and persuasive authority.  The Report's requirements do, in fact, directly contradict binding and

persuasive authority and contradicts the Middle District of Florida's own usual application of that standard for parties other than body shop plaintiffs.

Another concern, discussed more fully below, needs to be pointed out.  In a companion case, the court ordered Plaintiffs to amend to identify each individual Defendant for each claim.  Plaintiffs did so and the Court responded by harshly chastising the Plaintiffs for unnecessarily lengthening the complaint and threatened sanctions if such was done again.  The Report's requirement that Plaintiffs allege the specific facts of each known instance of tortious interference places the Plaintiffs in danger of violating the court's prior order and being sanctioned for doing so.

Respectfully, the inconsistency of previous orders and the conflict with current recommendations places the Plaintiffs in an intolerable position.  Under Supreme Court authority, the Plaintiffs are not required to provide the specificity demanded by the Report, but the Report so demands and if adopted, Plaintiffs will have to comply.  In doing so, Plaintiffs will face sanctions. The Plaintiffs will therefore have to intentionally violate one order to comply with a subsequent order if the Report is adopted.

For the reasons set out above, Plaintiffs submit the Report applies an erroneous pleading standard and should not be adopted.

17.   <u>Variations in methods or manner of interference is irrelevant</u>

The Report further asserts the "material variations in the facts," the actual words spoken by the Defendants to interfere with Plaintiffs' business prospects, are too divergent and therefore the claim must be dismissed.  The Report provides absolutely no citation to authority for this conclusion and, with great respect, this makes no sense.

Uniformity of form or manner of interference is not an element of a claim for tortious interference.  There is no case whatsoever under Louisiana authority that a method of interference

must be uniform from one instance to the next in order to constitute legally cognizably tortious conduct.  This requirement is a creation from whole cloth of a legal element which does not exist outside the corners of the Report and Recommendation and therefore violates the court's non-discretionary obligation to refrain from altering, amending or otherwise modifying existing state law.

Further, the conclusion is logically untenable.  Plaintiffs have always maintained there exists a menu of interference methods, primarily the conveyance of false, misleading and defamatory statements about the Plaintiffs and exertion of economic coercion upon consumers:

344.    Steering generally takes the form of an insurer relaying false or misleading information to a consumer after the consumer has identified a noncompliant target shop as the repair facility the consumer wants to perform repairs.  Insurers will also steer using threats of economic consequences to the consumer if they persist in using the shop of their choice.

345.    Regardless of which insurer is involved, the Defendants' insurance representative ordinarily provides the same list of false or misleading "information" to consumers after they have selected one of the Plaintiffs' shops as their choice of repair facility. Examples of these statements include but are not limited to the following:

•    The consumer is required to take their vehicle to an approved shop for repairs;
•    The selected shop is not on the insurer's preferred list;
•    The insurer has received complaints about the quality of the shop's work;
•    If the consumer takes their vehicle to the selected shop, repairs will take too long and the consumer will run out of rental car time and have to pay for a rental out of their own pocket;
•    The selected shop charges too much or "overcharges" and the consumer will have to pay the difference;
•    The insurer has received complaints about that particular shop from other consumers.
•    The consumer is required to take their vehicle to an approved facility for an estimate before they are allowed to go to the repair facility the consumer has identified as the repair facility of their choice.
•    The insurer will provide a guarantee on repairs performed at its preferred shops.

As has been repeatedly pointed out, the specific contents of the interference utilized by the Defendants varies from customer to customer, and which specific statement or set of statements utilized in any given instance of interference does not negate the allegations of the complaint.  The

contents of the interference, how many false statements need to be made or economic threats issued, is a function of how much fortitude each consumer ordinarily displays in the face of the Defendants' actions.  It may very well be that a single, knowingly false statement is sufficient to effect the interference (as with Ms. Chunn, where State Farm had only to make one declarative false statement to interfere with the planned business transaction with Parker Auto Body).  In other instances, it may take repeated efforts of coercion before a consumer capitulates (as with Ms. Farris and State Farm's repeated efforts).

What is constant is the intent to interfere through improper means, including but not limited to the examples provided in the complaint.  Whether the statement is the false assertion that a consumer is required to utilize a specific repair shop, the false assertion that a Plaintiff overcharges or refusing to provide rental car coverage until a consumer capitulates is irrelevant.  They constitute intentional and malicious interference through misrepresentation, defamation and/or economic coercion.

Further, that Defendants are willing to utilize multiple threats and false statements does nothing to remove the tortious nature of Defendants' actions.  It emphasizes the intentional and malicious nature of the interference–Defendants are willing to utilize multiple variations of interference to achieve the goal, drive custom and trade away from the disfavored Plaintiffs.  Thus, variation does not decrease or otherwise minimize the tortious nature of Defendants' conduct, it emphasizes it.

The Report's conclusion that "it is not plausible to believe every Defendant made the same statements to every prospective customer" is therefore demonstrable incorrect.  The Plaintiffs never alleged "every Defendant made the same statements to every prospective customer" of the Plaintiffs.  Plaintiffs never alleged every word uttered by every Defendant was identical in each and every

instance of interference or attempted interference.  Plaintiffs have always alleged the Defendants used the same script, the same menu of misleading or false statements or economic threats.  This averment is fairly well factually established by the examples provided in the complaint and in the present pleading.

In the absence of Louisiana authority requiring uniformity of manner, method and content of interference, the Report's conclusion is without legal foundation.  The contents of the complaint, which the Report chose to disbelieve in derogation of its non-discretionary duty, contradict the Report's explicit findings.  The conclusion is, therefore, void of all basis, legal and factual.

18.  <u>The Report's conclusion that Plaintiffs are embarking on a fishing expedition is demonstrably erroneous and misrepresents the Plaintiffs' burden of pleading</u>

The Report further finds, "What Plaintiffs' averments and arguments actually suggest is that they are largely unaware of facts to support their claims of tortious interference, and they are on the proverbial fishing expedition in hopes of discovering proof to support their claims."  This is legally and factually inaccurate.

First, finding proof and evidence to support the parties' claims is <u>exactly</u> the purpose of discovery.  *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal. 1998)("the purpose of discovery is to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute." See also*, Anderson v. Cryovac, Inc.*, 862 F.2d 910, 929 (1st Cir. 1988), aff'd, 900 F.2d 388 (1st Cir. 1990), *Reidhead v. Arizona*, 2014 WL 2861046, at *3 (D. Ariz. June 24, 2014), *Favreau v. Walmart Stores E., L.P*, 2011 WL 721504, at *1 (M.D. Fla. Feb. 22, 2011), *Taylor v. Greene*, 2010 WL 5248502, at *3 (S.D. Fla. Dec. 16, 2010), 8 Wright & Miller, *Federal Practice and Procedure: Civil* § 2001 (1st ed. 1970).

The Advisory Committee Notes to Rule 26 of the Federal Rules of Civil Procedure governing discovering explain that "[t]he purpose of discovery is to allow a broad search for facts, the names of witnesses, or any other matters which may aid a party in the preparation or presentation of his case."

"[D]iscovery allowed by the rules serves two purposes. First, discovery allows the plaintiff to develop facts to support the theory of the complaint and allows the defendant to develop facts to support its defenses. See *Hickman v. Taylor*, 329 U.S. 495, 501, 67 S.Ct. 385, 91 L.Ed. 451 (1947). Second, discovery is designed to allow the defendant to pin down the plaintiff's theories of liability and to allow the plaintiff to pin down the defendant's theories of defense[.]" *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365 (Fed. Cir. 2006).

As obtaining facts, proof and evidence in support of their claims is a specific purpose of discovery, the Report's conclusion that Plaintiffs just want to use discovery to find evidence of their claims and is therefore impermissible is wholly without legal basis.   Plaintiffs are explicitly permitted to do exactly what the Report condemns.

The Report's description of Plaintiffs' right to pursue discovery as a mere fishing expedition is inapropos.   A fishing expedition refers to attempts to inquire into actions or past wrongdoing unrelated to the claims or defenses alleged.   *Collens v. City of New York*, 222 F.R.D. 249, 253 (S.D.N.Y. 2004). See also, *Cameron v. Supermedia, LLC*, 2016 WL 1572952, at *3 (N.D. Fla. Apr. 19, 2016)(inquiry into matters unrelated to claims or defenses asserted constitutes inappropriate fishing expedition).

Therefore, by inverse definition, any discovery related to Plaintiffs' claims is not a fishing expedition.  However, the Report's concern is wholly premature.  The point in time when discovery sought must be weighed as to relevance is when it is propounded.   As no discovery has been

propounded, the court is hardly in a position to determine whether or not hypothetical discovery is irrelevant. Diligent research has not disclosed any authority allowing the court to determine the relevance of discovery requests which do not yet exist.

As the Plaintiffs are explicitly permitted to seek proof and evidence supporting their claims through discovery and there is no authority permitting the court to determine the relevance of discovery not yet propounded, there is no legal basis for the Report's conclusion the tortious interference claim may be dismissed on these grounds.

Additionally, the conclusion necessarily disregards the allegations of the complaint. In no other fashion could the Report conclude the Plaintiffs are unaware of facts supporting their tortious interference cause of action. As described in some detail in the complaint, the Plaintiffs know the manner, method and content of Defendants' tortious interference; Plaintiffs know the menu of false, misleading and defamatory statements Defendants use to tortiously interfere in Plaintiffs' business expectations, and the economic coercion exerted over claimants and insureds who balk at the interference. Plaintiffs provided specific examples of tortious interference–successful instances which accrue damages, and unsuccessful ones which show Defendants are doing exactly as Plaintiffs allege they are.

Having provided these allegations, the court is required to accept the averments of the complaint as true and draw all reasonable inferences in favor of the Plaintiffs. The authority to disregard asserted facts is delineated by a firm, bright-line rule. The trial court may not disregard facts asserted in the complaint unless they are of such fantastical quality as to defy reality as we know it, such as claims of time travel or encounters with space aliens. *Iqbal*, 556 U.S. at 696.

It cannot be argued the facts set out in the complaint are remotely of such fantastical quality as to defy reality. It hardly need be said that companies lie all the time. Enron, Volkswagen, Ford,

every financial institution involved in the financial crash of 2008 and the sub-prime mortgage industry, and, of course, American International Group, also known as Defendant AIG.  It is not reasonable for the Report to assume otherwise.

It is clear what the Report feels is lacking is specific <u>facts</u>–the names of consumers successfully interfered with, a detailed description of the methods of interference and all the other specifics which constitute the who, what, when, where and how of a Rule 9 claim.  However, Rule 9 does not apply and the Supreme Court, Eleventh Circuit and multiple other federal courts have repeatedly noted that specific facts are not required under a Rule 8 pleading standard.

The Plaintiffs allegations do not meet the very high, bright line rule set out by the Supreme Court allowing the court to simply disregard or disbelieve them.  The court is required to accept them as true, and it is required to apply the pleading standards of Rule 8 as also set out by the Supreme Court.  When the proper standards are applied to the allegations of the complaint, it is clear the Report's recommendation is in error and without all legal support.

19.    <u>The Report errs in arbitrarily deeming allegations of the complaint as conclusory</u>

The Report correctly asserts conclusory statements may be disregarded in analyzing a complaint's sufficiency.  However, the Report does not merely disregard conclusory statements; it deems all statements it does not like as conclusory so as to assert a purportedly legitimate basis for that disregard.

Authority on what constitutes a conclusory statement is admittedly not bountiful or always helpful.  Though apparently not fully capable of definition, courts generally accept conclusory statements are those which incorporate or express a legal conclusion.  See, e.g., *Erickson v. Pardus,* 551 U.S. 89, 93, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007)("It was error for the Court of Appeals to conclude that the allegations in question, concerning harm caused petitioner by the

termination of his medication, were too conclusory to establish for pleading purposes that petitioner had suffered "a cognizable independent harm" as a result of his removal from the hepatitis C treatment program."), *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011)("Thus, in ruling on a motion to dismiss, a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable."), *Oaktree Capital Mgmt., L.P. v. KPMG*, 963 F. Supp. 2d 1064, 1081 (D. Nev. 2013)("A legally conclusory statement on standing would be something like: "plaintiff has Article III standing."),

Rather more clear is what is <u>not</u> a conclusory statement:  Allegations of discrete factual events are not conclusory in the relevant sense. *Ocasio-Hernandez v. Fortuño-Burset*, 640 F.3d 1, 14 (1st Cir. 2011).  Statements of circumstances, occurrences, and events in support of the claim presented are not conclusory. *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 182 (2d Cir. 2012).

The Report makes several unsupported findings, such as finding factual allegations merely conclusory.  For example, the Report discards descriptions of the effect upon consumers of Defendants' actions as merely conclusory ("Pressured" is a conclusion, unsupported by facts.")  This is an incorrect holding as to what constitutes a conclusory statement.

The description of an emotional response to stimuli is not a statement which may automatically be defined as conclusory; the statement that one feels pressured is a factual statement of one's feelings.  It expresses the person's emotional response to stimuli, in this case the result of Defendants' actions and statements.  It does not incorporate or express any legal conclusion or legal relevance.  It is not an element of the claim of tortious interference and may not be deemed a mere recitation of the elements of the claim.

If the Court is aware of magic words to express feelings of pressure, coercion, duress, feeling threatened or intimidated without actually saying "I felt pressured/coerced/under duress/threatened/intimated," the Plaintiffs will return to the witnesses who provided these statements of their encounters with the various insurers and ask they rephrase their experiences in words more acceptable to the Court.

20.     <u>The Report erroneously recommends dismissal on the basis of the absence of magic words</u>

In addition to arbitrarily labeling allegations as merely conclusory, the Report additionally dismisses the individual examples of tortious interference on the ground that several examples fail to establish a Plaintiff suffered an actual injury as a result of the Defendant's actions.  Plaintiffs respectfully submit this is an improper conclusion.

The Report seems to be requiring magic words and in doing so is breaching its obligation to draw all reasonable inferences in favor of the Plaintiffs.  For example, in booting the example of Ms. Taylor, where Defendant Farm Bureau told Ms. Taylor she could visit two identified shops to obtain an estimate in such a way she believed she was not permitted to take her vehicle to Plaintiff Auto Body Specialists for repairs, the Report concludes the claim is insufficiently pled because "Plaintiffs fail to allege that Taylor actually had her vehicle repaired."

The Report does not, however, adequately explain how this would be relevant. The Report attempts to tie this to a failure to allege damages for this loss.  However, that is nonsensical.

Tortious interference looks to whether the actions of the defendant improperly and maliciously influenced Ms. Taylor not to do business with Auto Body Specialists.  Louisiana law does not require a showing that someone else got the business; merely a showing that the plaintiff did not as a result of defendant's actions.  The tort was complete once Ms. Taylor declined to do

business with Auto Body Specialist and the Plaintiffs have pled repeatedly throughout the complaint they have incurred damages as a result of Defendants' interference.

If there exists any Louisiana authority requiring as an element of the tortious interference claim that another vendor gain by the loss to Plaintiffs, diligent research has not uncovered it.

Perhaps the examples could have been more artfully drafted.  However, artless or artful, the Court is still required to draw all reasonable inferences in favor of the Plaintiff.  The Court is required, at the motion to dismiss stage,  to resolve any perceived ambiguities in favor of the Plaintiffs with final resolution the sole province of the jury. *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 182 (2d Cir. 2012).

21.   The complaint does not contain any shotgun pleading

The Report further concludes the complaint must be dismissed because it contains impermissible shotgun pleading.  Shotgun pleadings are those that incorporate every antecedent allegation by reference into each subsequent claim for relief or affirmative defense. *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006).

No such incorporation is present anywhere in the complaint.  The Report attempts to manufacture shotgun pleading by asserting, not that any such incorporation actually exists within the complaint, but that the contents of the complaint "intend all of the preceding paragraphs to be included in each count....The incorporation of each preceding count into each succeeding count is a form of "shotgun pleading" and is prohibited.."

Thus, though no incorporation of counts or factual allegations exist, the Report infers the existence. The Report cites no legal authority permitting it to infer improper pleading. Further, such an inference is a direct contravention of the nondiscretionary duty to draw all inferences favorable

to the Plaintiffs.  Without authority and in violation of legal obligations, the Report creates a problem which does not exist.  This is reversible error.

That, however, is not the only error.  The Report chides Plaintiffs for "continu[ing] their practice of not explicitly incorporating paragraphs into the counts of their complaints" For this chastisement, the Report relies upon comment made in a companion case, *A & E Auto Body, Inc. v. 21st Century Centennial Ins. Co.*, 6:14-cv-310, Doc. No. 341.

The dispositive problem with this conclusion is that the order upon which the Report relies was not handed down until September 23, 2015.  The *Parker* Plaintiffs filed their amended complaint on May 21, 2015.  Failure to comply with the directives of an order which did not exist until four months <u>after</u> the complaint was filed cannot be utilized as grounds for finding that complaint out of compliance.

The Report's next error is the refusal to acknowledge an order which did precede the complaint.  On June 11, 2014, also in *A & E Auto Body, Inc. v. 21st Century Centennial Ins*, the Court specifically found the existence of incorporation by reference of preceding allegations as grounds for dismissal as an improper shotgun pleading and plaintiffs were ordered to amend.  See Doc. No. 110.

As above, the Report makes a recommendation which places the Plaintiffs in a "damned if you do, damned if you don't" pleading position.  Having previously included incorporation, plaintiffs were directed not to do that as it constituted improper shotgun pleading.  Here, the Report recommends dismissal for <u>not</u> incorporating and therefor the complaint constitutes an improper shotgun pleading.  When combined with the finding that Plaintiffs should have heeded an order which did not even exist at the time the complaint was drafted, the court has closed every possible method and manner of pleading.  Plaintiffs respectfully request the Court make a conclusive

determination whether shotgun pleading is defined by the inclusion or absence of incorporation and Plaintiffs will follow the Court's direction.

Finally, Plaintiffs point out the complaint does specify which factual allegations apply to the claim of tortious interference:

543.    Louisiana law protects the businessman from malicious and wanton interference,' permitting only interferences designed to protect a legitimate interest of the actor. Thus, the plaintiff in a tortious interference with business suit must show by a preponderance of the evidence that the defendant improperly influenced others not to deal with the plaintiff.   *McCoin v. McGehee*, 498 So. 2d 272, 274 (La. App. 1st Cir. 1986 )(internal citations omitted). *Junior Money Bags, Ltd. v. Segal*, 970 F.2d 1, 10 (5th Cir. La. 1992)

544.    To succeed with such a claim, the plaintiff must show "'the defendant acted with actual malice.'" *Page v. Benson*, 101 So. 3d 545, 555 (La.App. 3 Cir. 2012).

545.    The Defendants have repeatedly engaged in malicious actions and a course of conduct designed to interfere with and intentionally injure the Plaintiffs' business relations and prospective business relations. The Defendants have repeatedly steered and attempted to steer customers away from the Plaintiffs' respective businesses through their repeated campaign of misrepresentation of facts, failure to verify facts damaging or tending to cause damage to the Plaintiffs business reputations before conveying the same to members of the public, implications of poor quality work, poor quality efficiency, poor business ethics and practices, and unreliability.

546.    Defendants performed these actions by relaying the false and/or misleading statements to both specific individuals (examples given above) and to an identifiable class of persons, those who identify the Plaintiffs, respectively, as the choice of body shop to perform repairs.

547.    Upon information and belief, at least one Defendant mailed letters to insureds and claimants containing the same or similar false and/or misleading statements regarding Plaintiffs and implicitly urging the potential customers of Plaintiffs to take their business elsewhere.

548.   The purpose of these actions are twofold: to punish the Plaintiffs who complained about or refused to submit to the various oppressive and unilateral price ceilings the Defendants were enforcing upon them, and to direct potential customers of the Plaintiffs to other vendors who would comply with the maximum price ceilings unilaterally imposed by the Defendants.

549.   Defendants have engaged in improper means of interference by engaging in defamatory conduct, engaging in economic coercion of both consumers and Plaintiffs, providing false and misleading information both about the Plaintiffs and the services offered by the insurer and preferred shop (e.g., asserting the insurer will only warrant the work of the preferred shop when it actually warrants nothing), falsely telling consumers they are required to take vehicles to specified shops for repairs or specified shops for estimates when they are not so required, among other improper means set forth in this pleading.

550.   Malicious intent is shown through the absence of legitimate business purpose in Defendants actions.  Without or without the defamatory statements, the Defendants have habitually and in concert paid the amount each pre-determined it would pay for a particular repair according to the pre-existing agreement.  Whether or not a patron visited a noncompliant plaintiff or a fully compliant network shop, the end result was a forgone conclusion and therefore the Defendants actions can only be attributed to malicious intent to harms the Plaintiffs.

551.   Malice is further shown by Defendants failure to notify consumers who have initiated or announced the intention of initiating a business relationship with a Plaintiff of known quality issues or repeated instances of poor repairs of which it has actual knowledge while continuing to notify consumers of false statements, actions which serve no public interest or legitimate business interest.

. . .

554.   The Plaintiffs have been damaged by the Defendants malicious and intentional actions without privilege and in violation of law. Plaintiffs are therefore entitled to compensation for these damages.

As the facts supporting the tortious interference claim are specified within the complaint, the conclusion otherwise is demonstrably erroneous.  For this reason, as those articulated above, Plaintiffs submit the conclusion of an improper shotgun pleading is without merit.

22.   Group Pleading

The Report again incorrectly construes the allegations of the complaint to dismiss upon impermissible "group pleading."  As above, the Report finds the allegations of the complaint not credible that each and every Defendant engages in identical forms of tortious interference.  Again, as above, a credibility determination is not within the court's discretion to make.

The complaint alleges that each and every Defendant has engaged in tortious interference with respect to each Plaintiff,  and provided specific examples of that interference, facts which provide a factual basis for the allegations of the complaint.

When the complaint so alleges, it is permissible for the Plaintiffs to utilize the shorthand term "the Defendants." *Jackson v. Bank of Am., NA*, 578 F. App'x 856, 860 (11th Cir. 2014),  *Crespo v. Coldwell Banker Mortgage*, 599 F. App'x 868, 872 (11th Cir. 2014), *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir.1997).  See also, *Carl's Furniture, Inc. v. APJL Consulting, LLC*, No. 15-60023-CIV, 2015 WL 1467726, at *5 (S.D. Fla. Mar. 30, 2015),  *Sprint Sols., Inc. v. Cell Xchange, Inc.*, No. 8:14-CV-00233-T-27, 2015 WL 1001272, at *2 (M.D. Fla. Mar. 6, 2015), *Sprint Solutions, Inc. v. Fils-Amie*, 44 F. Supp. 3d 1224, 1227 (S.D. Fla. 2014).

The practice only runs afoul of the applicable pleading standard where it results in a complaint that fails to give each defendant notice of the claims against it. *Sprint Solutions, Inc. v. Fils-Amie*, 44 F. Supp. 3d at 1227.

The Report disingenuously finds the complaint fails to give each defendant notice of the claims against them.  However, not even the Defendants argue they do not know what are the claims against them.  The extensive discussion of the tortious interference claim by Defendants in their multiple motions to dismiss shows they do have a complete understanding of the claims against them

and when such is shown, the complaint may not be dismissed on this ground. *Toback v. GNC Holdings, Inc.*, No. 13-80526-CIV, 2013 WL 5206103, at *2 (S.D. Fla. Sept. 13, 2013).

Certainly the detail with which the Report sets out the allegations of tortious interference make clear it understands the allegations against the Defendants, having devoted multiple pages to discussing those allegations.  It simply chooses not to believe them, which it is not permitted to do.

This, too, has previously been addressed by the courts:

> PNG's argument concerning the purported "lumping together" of defendants is also unpersuasive. . . .  However, even if Rule 9(b) applies to the claims in this case, Plaintiffs' allegations do not run afoul of Rule 9(b) by "lumping" the Defendants together. Although many of the Amended Complaint's fifty-nine paragraphs mention more than one defendant, they do so in the context of a narrative. Importantly, the Amended Complaint specifies how each Defendant engaged in an allegedly unfair and deceptive act. By doing so, the Amended Complaint satisfies the specificity requirements of Rule 9(b) and puts Defendants on sufficient notice of their roles in the scheme. Moreover, because the allegations are sufficiently clear as pled, PNG's contention that each paragraph must not mention more than one defendant would do nothing more than multiply the number of paragraphs in the Amended Complaint.

*Nat'l Numismatic Certification,* 2008 WL 2704404, at *16.

The only grounds for dismissal in the previous Report, adopted by the Court, was a directive to identify specifically which Defendants interfered with which Plaintiffs.   The complaint does so.  The Plaintiffs provided examples, and provided examples of unsuccessful interference exhibiting particularly egregious behavior.  As noted elsewhere, the failed interference instances do not give rise to a claim but they certainly do give rise to a reasonable inference that Defendants are acting in the manner described in the complaint.  As also noted elsewhere, the Court is required to give the Plaintiffs the benefit of that inference.   The Plaintiffs complied with the court's prior recommendation, again attempting to balance the line between satisfying the Court's contradictory demands that specific facts be pled but not too many or have sanctions imposed..

The detail with which the Report sets out the allegations of tortious interference and discusses the particular examples make clear it understands the allegations against the Defendants, having devoted multiple pages to discussing those allegations.  It simply chooses not to believe them, which it is not permitted to do.  Plaintiffs therefore respectfully submit the complaint does not include improper group pleading.

23.     The Report makes impermissible credibility determinations

The trial court is prohibited from making credibility determinations of the facts asserted in the complaint.  *Cohan v. Bonita Resort & Club Ass'n, Inc.*, No. 2:15-CV-61-FTM-38DNF, 2015 WL 2093565, at *5 (M.D. Fla. May 5, 2015).  The court is not free to disregard facts, nor may it dismiss a claim because it chooses not to believe those facts.  "Rule 12(b)(6) does not countenance dismissals based on a judge's disbelief of a complaint's factual allegations." *Neitzke v. Williams*, 490 U.S. 319, 327, (1989).  See also, *Ashcroft v. Iqbal*, 556 U.S. 662, 696, (2009), *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 428 (4th Cir. 2015), as amended on reh'g in part (Oct. 29, 2015).

The authority to disregard asserted facts is delineated by a firm, bright-line rule.  The trial court may not disregard facts asserted in the complaint unless they are of such fantastical quality as to defy reality as we know it, such as claims of time travel or encounters with space aliens or recent trips to Pluto.  *Iqbal*, 556 U.S. at 696.

Throughout the Report, the basis for recommending dismissal is explicitly linked to credibility determinations–the court is "not persuaded," certain facts are "not persuasive," or facts are "not credible."

The Report's conclusions are without doubt based upon its weighing of factual allegations and credibility.  As explained by the Eighth Circuit:

In his memorandum opinion dismissing the complaint, the district judge observed that Stephens had failed to provide "facts" that would indicate estoppel should apply and that Stephens failed to convince the court that ADG "in fact engaged in improper activities". The district judge further made a credibility finding when he noted that he found "it difficult to believe" Stephens was intimidated for three years. A finding of "no improper activities" might be proper on a summary judgment motion where undisputed evidence is developed and a credibility determination might apply after a bench trial on the merits, but such findings are not appropriate on a motion to dismiss where the court is bound to accept as true, for purposes of the motion, the facts alleged by the plaintiff.

*Stephens v. Associated Dry Goods Corp.*, 805 F.2d 812, 814 (8th Cir. 1986).

This is well established law. *Singleton v. Dep't of Corr*., 277 F. App'x 921, 922 (11th Cir. 2008)(district court erred when it "indulged in considering matters outside the pleadings as well as deciding disputed issues of fact and making credibility determinations."), *Cameron v. Seitz*, 38 F.3d 264, 270 (6th Cir. 1994)("When reviewing a motion to dismiss, the court should not weigh the evidence or evaluate the credibility of witnesses."),   *Gibson v. Thurman*, 2009 WL 2579656, *2 (E.D. Tenn. Aug. 17, 2009)("It is not the court's duty to weigh evidence or evaluate a witnesses' credibility.")

This has been recognized by the Middle District of Florida repeatedly. *Sapssov v. Health Mgmt. Associates, Inc*., 22 F. Supp. 3d 1210, 1226 (M.D. Fla. 2014), aff'd, 608 F. App'x 855 (11th Cir. 2015)("The Court is required to accept the factual allegations in a complaint as true when considering a motion to dismiss, and is unable to make the credibility determinations defendants urge."), *Trussell v. Quest Diagnostics Inc*., 2010 WL 1223890, at *2 (M.D. Fla. Mar. 24, 2010)("It is not this Court's role to make credibility determinations on a motion to dismiss. Thus, upon due consideration, the Court denies the motion to dismiss.")  *Traffic Jam Events, LLC v. Cortes*, 2009 WL 1043977, at *2 (M.D. Fla. Apr. 17, 2009)("Traffic Jam is correct that Defendants generally misinterpret the standard for dismissing a pleading in federal court. For instance, a party's

"credibility" is not considered at this stage, and there is no requirement to attach certain documents to the complaint or to plead the details of a loan agreement.")

Despite this, the Report makes specific admissions of weighing the allegations of the complaint and makes the choice to disregard them or disbelieve them, specifically for lack of purported credibility. The Report makes no citation to any authority permitting it to disregard facts, absent clear indications of demonstrable irrationality as defined by the Supreme Court. The facts asserted do not meet that extremely high standard for disregarding or disbelieving facts simply because the court is "not persuaded" and doing so is an unambiguous breach of federal rule.

It is also a breach to weigh the facts asserted in the complaint against the arguments of defendants in motions to dismiss. As the trial court is required to accept the factual allegations as true, it is prohibited from favoring the alternative facts or hypotheticals suggested by defendants, which this Court has previously recognized:

> Defendants argue that the Government "might have awarded [the] contracts for reasons besides [their] extortive acts." However, to reach this conclusion would require the Court both to weigh the facts and to weigh them in favor of the Defendants. The Court obviously can do neither in reviewing a motion to dismiss

*Lockheed Martin Corp. v. Boeing Co.*, 357 F. Supp. 2d 1350, 1368 (M.D. Fla. 2005).

See also, *Grande Vill. LLC v. CIBC Inc.*, No. CIV. 14 3495 NLH/JS, 2015 WL 1004236, at *7-8 (D.N.J. Mar. 6, 2015):

> Although defendants offer explanations for their decisions during the budget review process, the purpose of a motion to dismiss is not for the Court to weigh evidence but for the Court to determine whether the plaintiff has pleaded enough facts to suggest each element of their claim and whether they are entitled to pursue evidence in support of their claim. Further, the facts are viewed in the light most favorable to the plaintiff, not the defendant.
> Accordingly, defendants' motion to dismiss plaintiffs' claim for breach of the implied covenant of good faith and fair dealing will be denied.

By deliberately choosing to accept the arguments of Defendants in their motions to dismiss, explicitly linking decisions to credibility determinations and refusing to accept the allegations of the complaint as true,  the Report commits clear error.

24.     The Report's gratuitous references to the amount of time which has passed inaccurately represent the course of litigation

As part of the discussion on why the above claims should be dismissed, he Report notes at various points that given the amount of time Plaintiffs have had to develop their case, it is unlikely they will be able to ever do so and thus recommends dismissal with prejudice.  This is an inaccurate representation for several reasons.

In March, 2015, all Plaintiffs in MDL 2557 filed a motion to stay action on all cases pending resolution of the motions to dismiss which were then fully briefed pursuant to the motions instructions given by the Court on September 11, 2014.  The motion was denied.  However, the Court clearly stated that each case was sufficiently dissimilar, particularly as to matters of state law, that a ruling in one case did not signify an identical ruling would be forthcoming in other cases and so each case should await independent review.  See Order, Doc. No. 175 of MDL Docket No. 6:14-md-2557, dated April 3, 2015.

The Plaintiffs took the Court at its word and proceeded individually.

The complaint at issue is the first amended complaint.  It was filed on May 21, 2015.  Between June 5 and July 16, 2015, motions to dismiss, responses to those motions, replies and various other pleadings were filed.  As of July 16, 2015, no additional briefing was permitted on the motions and they were therefore fully briefed per the mandates issued to parties on September 11, 2014.  On August 18, 2015, the Court set the matter for hearing, rescheduled the hearing on August 24, 2015, then cancelled the hearing on August 25, 2016.

The amount of time which has passed since the amended complaint was filed, nearly a year, has been dedicated to motion practice and awaiting the Court's decision, in direct compliance with the Court's April 3, 2015, order.

The Report seeks to dismiss the complaint, in part, based upon that very compliance.  The Report is also rather misleading on this point.  The Plaintiffs were directed to amend the complaint and did so in compliance with the directions provided.  That no amendment was filed during the pendency of the motions to dismiss is not indicative of lack of diligence in additional development of the case and the Court is fully aware of that.  While complying with the order to await the Court's decisions, the Plaintiffs have continued working on all aspects of the case, which led to, among other things,  direct admissions of price fixing and intentional misrepresentation of the "market rate."  Because of the timing of the admissions, they were not included in several of the amended complaints (since they did not exist at that time) but certainly represent Plaintiffs' dedication to continuing investigation and fact gathering during the interim the Court was considering the motions to dismiss.

Since the Court ordered the Plaintiffs not make assumptions regarding the outcome of individual cases, the Plaintiffs justifiably awaited the individualized handling the Court advised was forthcoming.  Plaintiffs submit their fidelity to the directions of the Court should not be used as a basis for assuming dismissal with prejudice is appropriate, particularly where, as here, the bulk of the time interval was spent awaiting the Court's ruling.

25.   Legal Authority

In the event the Court determines to adopt the Report and Recommendation, for purposes of creating a clear record, the Plaintiffs respectfully request the Court provide the following:

- Identification of Louisiana authority providing a direct request for services from a defendant is an element of an unjust enrichment claim under Louisiana law;

- Identification of Louisiana authority setting out "reasonable expectation of compensation" is an affirmative element of a claim for unjust enrichment under Louisiana law;

- Identification of Louisiana authority requiring all instances of tortious interference must be identical for a cognizable claim of tortious interference with business prospects may lie;

- Identification of Louisiana authority designating a vendor other than Plaintiff must have benefitted from Defendants' tortious interference before a cognizable claim for tortious interference with business prospects may lie;

- Identification of Louisiana authority holding partial payment of a debt for services extinguishes all legal rights to seek payment of outstanding balance due;

- Identification of Louisiana authority holding a defendants' unilateral course of conduct defeats an unjust enrichment claim as a matter of law;

- Identification of Louisiana authority holding a defendants' unilateral course of conduct executed by coercion and/or duress defeats a quantum meruit claim as a matter of law;

- Identification of Louisiana authority holding determination of fair or adequate compensation for services rendered  is a question of law, not fact;

- Identification of Louisiana authority holding determination of fair or adequate compensation for services rendered is a question of law the court may decide prior to discovery and submission of evidence of value;

- Identification of Louisiana authority holding determination of conferral of a benefit is an element of quantum meruit under Louisiana law;

- Identification of Louisiana authority holding the existence or conferral of a benefit is a question of law the court may determine from the contents of a complaint;

- Identification of Louisiana authority holding unilateral conduct by a defendant constitutes an affirmative act of waiver of legal rights and/or creates an estoppel;

- Identification of federal authority overruling or modifying " *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007);

- Identification of federal authority prohibiting pleading upon information and belief;

- Identification of federal authority permitting a district court to make credibility determinations of a complaint's allegations where the allegations do not impeach the every day reality standard mandated by the Supreme Court in *Iqbal,* e.g., "claims about little green men, or the plaintiff's recent trip to Pluto, or experiences in time travel.";

- Identification of federal authority permitting a trial court to apply the law of Florida to a Louisiana state law cause of action;

- Identification of federal authority providing a court may infer the existence of shotgun pleading in the absence of any incorporation by reference and render dismissal based upon that inference;

- Identification of federal authority permitting a court to dismiss claims based upon application of an affirmative defense(s) that are contradicted by the allegations of the complaint;

- Identification of federal authority permitting a court to affirmatively adopt the arguments of defendants set forth in motions to dismiss when the allegations of the complaint directly contradict those arguments.

Based upon the authority set forth above, Plaintiffs respectfully object to the Report and Recommendation issued in this cause, Doc. No. 107.

Respectfully submitted, this the 22nd day of April, 2016.

PARKER AUTO BODY, INC, et al

BY:     /s/ Allison P. Fry
        John Arthur Eaves, Jr.
        Allison P. Fry

        Attorneys for the PlaintiffS

John Arthur Eaves,
Attorneys at Law
101 N. State Street
Jackson, MS 39201
Telephone:    601.355.7961
Facsimile:    601.355.0530
allison@eaveslaw.com

<u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing Plaintiff's Objections to Magistrate's Report and Recommendation has been served electronically via the ECF system  all counsel of record registered to receive notice.

<u>/s/ Allison P. Fry</u>